SOLETHER, APPELLANT, *v.* OHIO TURNPIKE COMMISSION, APPELLEE.

(No. 790—Decided January 18, 1954.)

Messrs. *Bowman, Hanna & Middleton*, for appellant.
Messrs. *Avery & Avery*, for appellee.

FESS, P. J. Defendant's demurrer to the petition on the ground that the facts therein stated do not constitute a cause of action was sustained and the petition was dismissed. Plaintiff appeals on questions of law.

The petition alleges that the defendant seeks to appropriate "all rights to erect on any of the aforesaid remaining lands any billboard, sign, notice, poster, or other advertising device, which would be visible from the travelway of Ohio Turnpike Project No. 1, and which is not now upon said lands."

Plaintiff alleges further "that the same is not a necessary part, or required in, the construction, maintenance and operation of said Ohio Turnpike by the defendant commission"; that defendant's petition in the condemnation case seeking to deprive plaintiff of her right to erect signs and other advertising devices upon her lands is in violation of Section 19, Article I of the Ohio Constitution, in that such rights are taken from plaintiff for purposes other than for the making or repairing of roads which should be open to the public without charge; and that the defendant is seeking to appropriate the right to pre-

vent her from constructing or maintaining signs, etc., upon her lands, "which right is denied the defendant commission under the Constitution of Ohio, as said right is not being taken for a public use, for highway purposes, or in time of war or other public exigencies apparently requiring the immediate seizure of said right."

Plaintiff prays for an injunction restraining defendant from the acquisition of the rights she may have to signs and other advertising devices set forth in the condemnation proceeding.

In reaching a decision in this case we are, of course, limited to a consideration of the allegations of the pleading, the Constitution of Ohio, the Turnpike Act and the authorities relating to the exercise of the power of eminent domain. Under the rule of liberal construction, the petition alleges in effect that the commission is seeking to appropriate all rights of the plaintiff owner to erect on all her property any advertising device visible from the turnpike (not now upon her property); that the acquisition of such rights is not necessary for the construction, maintenance or operation of the turnpike; and that the property right or easement is not to be taken for a public use. Upon demurrer thereto, these allegations must be taken as true.

Merely because the language employed is inartificial or involves conclusions of law does not afford a basis for sustaining a demurrer. If the language of an allegation, according to its ordinary meaning, contains a fact presenting an issue, it is good as against demurrer. *Trustees* v. *Odlin*, 8 Ohio St., 293; *Stoutenburg* v. *Lybrand*, 13 Ohio St., 228; *Railroad Co.* v. *Hutchins*, 37 Ohio St., 282; *McGill* v. *Worland*, 25 Ohio App., 297; *Green* v. *Carter, Treas.*, 28 Ohio App., 492, 162 N. E., 814.

That the Turnpike Act is a valid constitutional enactment is established. *State, ex rel. Kauer, Dir.,* v. *Defenbacher, Dir.,* 153 Ohio St., 268, 91 N. E. (2d), 512; *State, ex rel. Allen,* v. *Ferguson, Aud.,* 155 Ohio St., 26, 97 N. E. (2d), 660; *State, ex rel. MacDonald,* v. *Ferguson, Aud.,* 155 Ohio St., 46, 97 N. E. (2d), 671; *State, ex rel. Ohio Turnpike Commission,* v. *Allen, Secy.-Treas.,* 158 Ohio St., 168, 107 N. E. (2d), 345, certiorari denied, 344 U. S., 865, 97 L. Ed., 671, 73 S. Ct., 107.

Among the broad powers conferred upon the commission

by the act is the power to acquire by condemnation, in the manner therein specifically provided, such public or private lands, or parts thereof or rights therein, rights of way, property, rights, easements, and interests *as it deems necessary* for carrying out the provisions of the act, Section 1205(i), General Code (Section 5537.04[I], Revised Code), and to do all acts and things necessary or proper to carry out the powers expressly granted in the act. Section 1205(o), General Code (Section 5537.04[O], Revised Code). It may be of some significance that Section 1207, General Code (Section 5537.07, Revised Code), empowers the commission to acquire by purchase (not condemnation) such property rights as *it deems are necessary or convenient* for the construction and operation of the turnpike. The word "necessary" has no fixed character peculiar to itself. "It admits of all degrees of comparison; and is often connected with other words, which increase or diminish the impression the mind receives of the urgency it imports." Chief Justice Marshall, in *McCulloch* v. *Maryland,* 17 U. S. (4 Wheat.), 316, 414, 4 L. Ed., 579, 603. The word "necessary" in acts relating to eminent domain does not mean "absolutely necessary or indispensable," but "reasonably necessary to secure the end in view." *Sayer* v. *City of Orange* (N. J.), 67 A., 933; *Chicago, I. & L. Ry. Co.* v. *Baugh,* 175 Ind., 419, 94 N. E., 571; *State* v. *Whitcomb,* 94 Mont., 415, 22 P. (2d), 823; *Aurora & Geneva Rd. Co.* v. *Harvey,* 178 Ill., 477, 53 N. E., 331, 334; *Commissioner of Parks* v. *Moesta,* 91 Mich., 149, 51 N. W., 903, 904; *People* v. *Fisher,* 190 N. Y., 468, 83 N. E., 482, 485; *Department of Public Works* v. *Lewis,* 411 Ill., 242, 103 N. E. (2d), 595, 597.

Section 19 of Article I of the Constitution provides that private property shall ever be held inviolate but subservient to the public welfare and, with certain exceptions, where private property shall be taken for public use, a compensation shall first be made in money, etc. Neither Section 19, Article I, nor Section 5 of Article XIII, confers the power of eminent domain. *Giesy* v. *Cincinnati, Wilmington & Zanesville Rd. Co.,* 4 Ohio St., 308, 327. Statutes delegating authority to exercise the right of eminent domain must be strictly construed and the powers granted by the Legislature must be strictly pursued. *Pon-*

*tiac Improvement Co.* v. *Board of Commissioners,* 104 Ohio St., 447, 135 N. E., 635, 23 A. L. R., 866. And there is no right to take private property for public use unless the taking is necessary.

"But there must be a public *necessity* for the use, it is said, to justify taking private property for it. The words of the Constitution are, 'public welfare,' but I have no objection to the term 'necessity,' provided that it be not used as synonymous with *'indispensable.'* " . *Shaver* v. *Starrett,* 4 Ohio St., 494, 499.*

" * * * the necessity upon which the proper exercise of the power depends, relates rather to the nature of the property and the uses to which it is applied, than to the exigencies of the particular case in which it is exercised." *Giesy* v. *Cincinnati, Wilmington & Zanesville Rd. Co., supra,* 326.

See, also, *Malone* v. *City of Toledo,* 34 Ohio St., 541, 546; *Railroad Co.* v. *Village of Belle Centre,* 48 Ohio St., 273, 295, 27 N. E., 464; *State, ex rel.,* v. *Ferguson, supra.*

The Ohio Turnpike Commission having determined that it is necessary for it to acquire by condemnation the right of the plaintiff to erect signs upon the remainder of her property, can a court of equity inquire into the necessity of the taking and whether such rights are to be taken for a public use? In private corporation appropriation proceedings, the question of necessity is determined by the court as a preliminary question, and an appeal from such determination may be taken by the owner upon the entry of the final order. But no provision is made for the raising or determination of such issue in the Turnpike Act, and the owner is relegated to an independent action in equity to determine such issue. *In re Appropriation by Ohio Turnpike Commission, ante,* 221.

---

*In *State, ex rel. Bruestle,* v. *Rich,* 159 Ohio St., 13, 110 N. E. (2d), 778, the Supreme Court holds that property taken for "the public welfare" is regarded as property "taken for public use." The people, in the adoption of the section, must have intended a distinction between "public welfare" and "public use." It would seem to follow that the taking of private property for public use is to be regarded as in furtherance of the public welfare and that the people did not intend that private property could be taken for the public welfare except as taken for public use. Neverthless, we are bound to respect and apply the definition as declared in the syllabus of the case.

The overwhelming weight of authority makes clear beyond any possibility of doubt that the question of the necessity or expediency of a taking in eminent domain lies within the discretion of the Legislature and is not a proper subject of judicial review. 1 Nichols on Eminent Domain (3 Ed.), 373, Section 4.11. But while necessity is not primarily a judicial question, there may be such absolute lack of necessity as to render the proceedings void, and it necessarily follows that an owner who alleges such lack of necessity is entitled to have the question passed upon by a judicial tribunal. 1 Nichols on Eminent Domain (3 Ed.), 379, Section 4.11[2], citing *City of Cincinnati* v. *Louisville & Nashville Rd. Co.*, 88 Ohio St., 283, 102 N. E., 951.

"In saying that the exercise of this power properly belongs to the General Assembly, and not to the judiciary, I do not intend to express a doubt, that in cases where its limits have been exceeded, or its spirit and purpose abused, a judicial remedy may not be afforded. If the Legislature, by a direct exercise of authority, should undertake to appropriate property for purposes beyond the scope of this power; or if any subordinate agency, under a power properly conferred, should abuse the authority by using it irregularly, oppressively, or in bad faith, there can be no doubt of the power of the courts to furnish an effectual remedy against such illegal acts." *Giesy* v. *Railroad, supra,* 326.

In the *Giesy case* the court proceeded to determine upon the record whether the acquisition of land for a depot was necessary.

In *Wheeling & Lake Erie Rd. Co.* v. *Toledo Ry. & Terminal Co.*, 72 Ohio St., 368, 74 N. E., 209, 106 Am. St. Rep., 622, the court quotes with approval from Lewis' on Eminent Domain:

" 'But, when the statute does not designate the property to be taken, nor how much may be taken, then the necessity of taking particular property is a question for the courts.' "

The court, at page 382, quotes also from Judge Freeman in a note to *Lynch* v. *Forbes* (161 Mass., 302, 37 N. E., 437, 42 Am. St. Rep., 402), as follows:

" '* * * where the Legislature has only authorized the taking of such property as is necessary, the question of the necessity for taking is a judicial one which must be determined either

by a court, jury, or some *quasi*-judicial tribunal designated in the statute.' "

In *Sargent* v. *City of Cincinnati*, 110 Ohio St., 444, 144 N. E., 132, the court says, at page 451:

"All these legislative functions relate to the necessity and exigency of the taking, but owners of private property may judicially inquire whether the specified use is a public use or whether such use will justify or sustain the compulsory taking of private property, and even though the legislative authority has declared the use to be a public one, the *courts may properly inquire into the good faith of such declaration and whether there has been a manifest abuse of power.*" (Emphasis added.)

In *Emery* v. *City of Toledo,* 121 Ohio St., 257, 167 N. E., 889, the court holds that in appropriating private property to municipal uses, the determination of the municipality of the fact and extent of the public need and the uses to which the property shall be subjected is legislative and political, and may not be questioned in the appropriation proceedings, but an owner whose property is being appropriated may invoke the aid of a court of equity to determine whether the use is a public one.

Section 10 of Article XVIII of the Ohio Constitution provides that a municipality appropriating property for public use may, in furtherance of such public use, appropriate an excess over that actually to be occupied by the improvement, and may sell such excess with such restrictions as shall be appropriate to preserve the improvement made. This is a rather broad grant of discretion. But in *City of Cincinnati* v. *Vester* (1929), 33 F. (2d), 242, the United States Circuit Court of Appeals holds that condemnation of property in excess of that actually required for the widening of a street, for the purpose of selling at a profit and paying for the improvement, is not for a public use and constitutes a denial of due process. The court holds also that whether the use for which the property is condemned is public or private is a judicial question to be determined, necessarily, upon the facts relating to the subject matter involved. In this connection, it may be observed that no specific authority is granted the Ohio Turnpike Commission by the act to acquire advertising rights or to acquire excess prop-

erty. Specific provision for condemnation of excess property unnecessary for the improvement would present a serious question as to its validity under the Constitutions of Ohio and of the United States. Whether the attempted taking of advertising rights herein is justified under the police power is not presented in this case. The power to enact the Turnpike Act is derived from Section 19, Article I. Cf. *Pontiac Improvement Co.* v. *Commissioners, supra,* 463, 466.

In *City of East Cleveland* v. *Nau* (1931), 124 Ohio St., 433, 179 N. E., 187, the court holds that under Section 10, Article XVIII, a municipality acquiring excess property must sustain the purpose of such acquisition by proof of its necessity, and that while a court may not disturb the reasonable discretion exercised by municipal authorities as to the amount of excess property necessary to be appropriated in furtherance of a public use, it will not sanction an arbitrary or unreasonable taking of private property in furtherance of the contemplated use.

Determination of the location of the route of the highway, the approaches thereto, the designs, plans and specifications thereof, and the selection of material, are within the discretion of the commission. *State, ex rel. Shafer,* v. *Ohio Turnpike Comm.,* 159 Ohio St., 581, 113 N. E. (2d), 14. It is to be observed, however, that even in that case an extensive record was made upon the issues raised in the mandamus action which was reviewed by the Supreme Court in reaching the conclusion that the relator failed to carry the burden of proof and to establish any bad faith or abuse of discretion on the part of the commission. In that case, the petition did not charge fraudulent conduct, bad faith or specifically charge abuse of discretion. The purport of the charge was that the commission acted arbitrarily and, therefore, "without discretion." (Page 591.)

Based upon the above authorities, a majority of this court conclude that an owner whose property rights are sought to be appropriated by the Ohio Turnpike Commission has the right to institute an action for a judicial determination upon the evidence adduced at the trial thereof—(1) whether the taking of such rights is reasonably necessary to the operation of the turnpike, and (2) whether such rights are to be taken for a public purpose. It is observed that the petition fails to allege

that the action taken by the commission is unreasonable, arbitrary or capricious, but a majority of the court is of the opinion that such an allegation would add nothing to the materiality of the pleading. If the evidence should disclose that the taking is unnecessary or not for a public use, it follows that such attempted taking is unreasonable and unlawful. Inasmuch as the petition alleges that the taking of the rights is not necessary and is not for a public use, it cannot be determined as a matter of law that the taking is necessary or that it is for a public use. In so holding, we do not determine in favor of or against the issues raised by the petition. We merely find that the petition states a cause of action presenting issues which must be determined upon evidence adduced at the trial.

It may well be asserted that this conclusion conflicts with the recent decision of this court, without opinion, in *Ellis* v. *Turnpike Commission.*\* In the *Ellis case* our attention was focused upon the interpretation of the statute with respect to the broad powers conferred upon the commission, and the procedural principle that the allegations of a petition must be construed in their most favorable aspect to the pleader may have been overlooked.

The judgment is reversed and the cause remanded for further proceedings.

*Judgment reversed and cause remanded.*

Conn, J., concurs.

Deeds, J., dissenting. As I view the record on this appeal, the demurrer of the commission to the petition of the plaintiff presents the definite question as to whether the court may substitute its opinion for that of the commission, respecting the necessity for the appropriation of certain property rights of the plaintiff.

All the available facts relevant and necessary to a determination of that question are presented to the court by the allegations of the petition.

It is necessary only to apply the established rules of law to

---

\*Reversed, *Ellis* v. *Ohio Turnpike Commission*, 162 Ohio St., 86.

the facts and the conclusion seems clear that the petition does not contain facts sufficient to entitle the plaintiff to an injunction which would prevent the commission from the exercise of its discretion as duly authorized by the Legislature of the state.

The pertinent allegations of the petition of the plaintiff, referring to the right to erect any billboard, sign and advertising device, which right is sought to be appropriated, are "that same is not a necessary part, or required in, the construction, maintenance and operation of said Ohio Turnpike by the defendant commission," and, also, "as said right is not being taken for a public use, for highway purposes or in time of war or other public exigencies apparently requiring the immediate seizure of said right."

Certain provisions of the Ohio Turnpike Act define clearly the authority and discretionary powers of the commission applicable to the situation presented in this case as follows:

Section 5537.02, Revised Code. "There is hereby created a commission to be known as the 'Ohio Turnpike Commission.' Such commission is a body both corporate and politic in this state, and the exercise by it of the powers conferred by Sections 5537.01 to 5537.23, inclusive, of the Revised Code, in the construction, operation, and maintenance of turnpike projects shall be held to be essential governmental functions of the state, but the commission shall not be immune from liability by reason thereof."

Subsections A, E, H, I, J and O of Section 5537.04, Revised Code:

"(A) Adopt bylaws for the regulation of its affairs and the conduct of its business;
"* * *

"(E) Construct, maintain, repair, police, and operate turnpike projects, and establish rules and regulations for the use of any such turnpike project;
"* * *

"(H) Acquire, hold, and dispose of real and personal property in the exercise of its powers and the performance of its duties under Sections 5537.01 to 5537.23, inclusive, of the Revised Code;

"(I) Acquire, in the name of the state, by purchase or

otherwise, on such terms and in such manner as it deems proper, or by the exercise of the right of condemnation in the manner provided by Section 5537.06 of the Revised Code, such public or private lands, including public parks, playgrounds, or reservations, or parts thereof or rights therein, rights of way, property, rights, easements, and interests as it deems necessary for carrying out Sections 5537.01 to 5537.23, inclusive, of the Revised Code, and full compensation shall be paid for public lands, playgrounds, parks, parkways or reservations so taken;

"(J) Designate the locations, and establish, limit, and control such points or ingress to and egress from each turnpike project as are necessary or desirable in the judgment of the commission and of the director of highways to insure the proper operation and maintenance of such projects, and prohibit entrance to such project from any point not so designated, and, at its cost, at all points of ingress and egress, cause to be erected large and suitable signs, facing traffic from each direction on the toll road, which shall designate the number and other designations of all United States or state highways of ingress or egress, the names of all Ohio municipal corporations with a population of five thousand or more within a distance of seventy-five miles on such roads of ingress or egress, and the distance in miles to such designated municipal corporations;

"* * *

"(O) Do all acts necessary or proper to carry out the powers expressly granted in Sections 5537.01 to 5537.23, inclusive, of the Revised Code."

Section 5537.07, Revised Code. "The commission is hereby authorized and empowered to acquire by purchase, whenever it deems such purchase expedient, any land, property, rights, rights of way, franchises, easements, and other interests in lands as it deems are necessary or convenient for the construction and operation of any turnpike project, upon such terms and at such price as it considers reasonable and can be agreed upon between the commission and the owner thereof, and take title thereto in the name of the state."

It is significant that the petition of the plaintiff contains no allegations charging the commission with either fraud or an abuse of discretion or that it is acting arbitrarily or in bad faith.

The petition does contain a complete description of the property of the plaintiff and the manner in which it will be traversed by the turnpike and sets out a portion of the resolution of the commission which describes the specific advertising rights which the commission is seeking to appropriate, as follows:

"All rights to erect on any of the aforesaid remaining lands any billboards, sign, notice, poster, or other advertising device which would be visible from the travelway of Ohio Turnpike Project No. 1, and which is not now upon said lands."

The principle of law is well established in this state that "in the absence of fraud, bad faith, or abuse of discretion, a court of equity will not attempt to substitute its judgment for the judgment of an administrative or executive officer or board when acting within limits of discretion vested in them by law."

*Lattsco, Inc.,* v. *Mutual Mortgage & Investment Co.,* 33 Ohio Law Abs., 644, 6 Ohio Supp., 102; *Gall* v. *City of Cincinnati,* 18 Ohio St., 563; *Braden* v. *Commrs. of Logan County,* 31 Ohio St., 386; *Thompson* v. *Love,* 42 Ohio St., 61; *Katz* v. *Linder,* 17 C. C. (N. S.), 518, 32 C. D., 260, affirmed 88 Ohio St., 549, 106 N. E., 1064; *State, ex rel. Landis,* v. *Board of Commrs. of Butler County,* 6 Ohio App., 440, affirmed 95 Ohio St., 157, 115 N. E., 919; *Brannon* v. *Board of Edn. of Tiro Consolidated District,* 99 Ohio St., 369, 124 N. E., 235; *Snyder* v. *Board of Park Commissioners of Cleveland Met. Park Dist.,* 125 Ohio St., 336, 181 N. E., 483; *Bloch* v. *Glander, Tax Commr.,* 151 Ohio St., 381, 86 N. E. (2d), 318; *State, ex rel. Gerspacher,* v. *Coffinberry,* 157 Ohio St., 32, 104 N. E. (2d), 1.

The Supreme Court of the state has determined in *State, ex rel. Ohio Turnpike Commission,* v. *Allen, Secy.-Treas.,* 158 Ohio St., 168, 107 N. E. (2d), 345, that:

"The Turnpike Act, Sections 1201 to 1222, General Code, is a constitutionally valid legislative enactment. (*State, ex rel. Kauer, Dir.,* v. *Defenbacher, Dir.,* 153 Ohio St., 268; *State, ex rel. Allen,* v. *Ferguson, Aud.,* 155 Ohio St., 26, and *State, ex rel. MacDonald,* v. *Ferguson, Aud.,* 155 Ohio St., 46, approved and followed.)"

The Supreme Court has, in other decisions, made announcements in defining and interpreting the authority and

discretionary power granted the commission under the provisions of the Turnpike Act, which it seems to me control a decision of the questions presented on this appeal.

In *State, ex rel. Allen,* v. *Ferguson, Aud.,* 155 Ohio St., 26, 97 N. E. (2d), 660, the ninth paragraph of the syllabus is as follows:

"Subject to constitutional limitations, the General Assembly may ordinarily grant to an agency of the state power to do or authorize others to do anything which an individual might lawfully do and which such agency deems necessary to construct, maintain and operate a public project that the state itself would have authority to undertake. In such an instance it is not necessary, *in order to avoid a delegation of legislative power,* for the General Assembly to specify or define the particular action which may be taken or authorized or to limit such power in any way, other than by relating it to the construction, maintenance and operation of such public project."

In *State, ex rel. Shafer,* v. *Ohio Turnpike Commission,* 159 Ohio St., 581, 113 N. E. (2d), 14, in the opinion of the court announced by Middleton, J., the principles of law applicable in this case are set forth clearly, and in my opinion are decisive of the issues presented. In the opinion in the *Shafer case, supra,* it is stated, at page 588, as follows:

"The only restraint upon the exercise of discretion by the commission is that which the law imposes upon all administrative bodies, viz., that it act in good faith and not in abuse of its discretion."

From the opinion in the *Shafer case, supra,* we find further statements concerning the exercise of discretion and the meaning of "abuse of discretion," which are applicable and persuasive in the case before us, as follows:

"The rule is generally accepted that, in the absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner. All legal intendments are in favor of the administrative action. 42 American Jurisprudence, 680, Section 240; *Bloch* v. *Glander, Tax Commr.,* 151 Ohio St., 381, 86 N. E. (2d),

318; *State, ex rel. Gerspacher,* v. *Coffinberry et al., Industrial Commission,* 157 Ohio St., 32, 104 N. E. (2d), 1; *Wheeling Steel Corp.* v. *Evatt, Tax Commr.,* 143 Ohio St., 71, 54 N. E. (2d), 132.

"Abuse of discretion by the commission is not specifically charged, but the charge of acting 'arbitrarily' and 'without the exercise of discretion' means 'abuse of discretion' if anything. Reference to a few of the many available decisions will suffice to demonstrate the general understanding of abuse of discretion.

" 'The exercise of an honest judgment, however erroneous it may seem to be, is not an *abuse of discretion.* Abuse of discretion, and especially gross and palpable abuse of discretion, which are the terms ordinarily employed to justify an interference with the exercise of discretionary power, implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' *People* v. *N. Y. C. Rd. Co.,* 29 N. Y., 418, 431, quoted from in *Alliance* v. *Joyce,* 49 Ohio St., 7, 22, 30 N. E., 270, by Dickman, J.

" 'The meaning of the term "abuse of discretion" in relation to the granting of a motion for a new trial connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary, or unconscionable attitude on the part of the court.' *Steiner* v. *Custer,* 137 Ohio St., 448, 31 N. E. (2d), 855.

" '* * * it must be kept in mind that the term "abuse of discretion means more than an error of law or error of judgment * * *." It means "a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence" * * *. Where the court does not exercise a discretion in the sense of being discreet, circumspect, prudent and exercising cautious judgment, there is an abuse of discretion. * * * The term has been defined as "a view or action that no conscientious judge, acting intelligently, could have honestly taken." ' *State, ex rel. Wilms* v. *Blake et al., Industrial Commission,* 144 Ohio St., 619, 624, 60 N. E. (2d), 308. A similar statement appears in *State* v. *Ferranto,* 112 Ohio St., 667, 676, 148 N. E., 362."

The commission has determined and declared by resolution that the property rights, in question, of the plaintiff are necessary in the construction and operation of the turnpike, and has provided for full compensation to the plaintiff for those property rights.

242

Therefore, it is my view that the judgment of the Court of Common Pleas to the effect that the petition of the plaintiff failed to state a cause of action for an injunction should be affirmed.