OPINION
Appellant, Media One of Ohio, Inc. ("MediaOne"), appeals from the judgments of the Lake County Court of Common Pleas entered on July 6, 1999, and on February 15, 2000. On February 24, 1999, MediaOne filed two verified petitions for appropriation pursuant to R.C. 163.05 seeking easements in order to provide cable services to apartments owned by appellees, Manor Park Apartments Limited ("Manor Park"), Multi-Builders, Inc., WilloWood, and Norman Millstein.
The first petition was filed against Manor Park and Multi-Builders, Inc., and the second against WilloWood and Norman Millstein. On July 6, 1999, the trial court denied and dismissed both petitions as they related to Manor Park and WilloWood. MediaOne filed notice of appeal on August 5, 1999. The trial court's judgment entry did not indicate the disposition for either Multi-Builders, Inc., or Norman Millstein. This court remanded the case to the trial court on February 8, 2000, for clarification of the status of those parties. On February 15, 2000, the trial court entered judgment denying MediaOne's petitions as they related to Multi-Builders, Inc. and Norman Millstein. MediaOne filed notice of appeal to this judgment on March 14, 2000. Subsequently, on April 6, 2000, this court consolidated the cases and the appeals for all purposes. The following facts are relevant to a determination of the appeals.
WilloWood and Manor Park are private multiple-unit apartment complexes located in Eastlake, Ohio. They have a combined total of three hundred thirty-two apartment units. In 1986 and 1988 respectively, Continental Cablevision of Ohio, Inc. ("Cablevision"), entered into agreements with WilloWood and Manor Park to provide cable television service to the apartments. The agreements for the provision of service were for ten-year periods, with options for an additional five years each. The five-year option was to commence at the end of the initial term unless WilloWood or Manor Park notified Cablevision of their intent not to renew the agreement.
In 1996, Cablevision was purchased by U S WEST, and in May, 1997, all Cablevision properties became part of MediaOne. At that time, MediaOne assumed all of Cablevision's rights and obligations. In 1993, WilloWood's counsel had notified Cablevision by letter that it would not renew their agreement. Likewise, in 1997, Manor Park informed MediaOne that it did not intend to renew the access agreement. Also, in 1997, WilloWood again informed MediaOne that it was terminating the agreement, indicating that the termination would be effective on August 16, 1998. Nevertheless, access was not terminated to either complex and MediaOne continued providing cable service to both until April 30, 1999, two months after the petitions for appropriation were filed.
On August 27, 1998, WilloWood's counsel sent a letter to MediaOne requesting the "orderly termination of your operation at this development and vacation of the premises in accordance with your agreement." This letter characterized MediaOne's continued presence on the property as trespass, and threatened eviction proceedings. On September 10, 1998, MediaOne's account executive sent a letter to appellees offering a revenue sharing plan (eight percent of the fees it earned) in exchange for an exclusive access agreement to the apartments. The letter did not mention the possibility of MediaOne appropriating the property.
On September 18, 1998, MediaOne's legal department responded to WilloWood's letter of August 27, 1998. MediaOne acknowledged that the access agreement expired in 1995. Also, in spite of the fact WilloWood's letter requested that MediaOne terminate its service, MediaOne's letter indicated they had not received a formal request for termination of services, and that it would need ninety-days notice to effect a smooth transition to the new provider. WilloWood responded by letter on September 24, 1998, asking MediaOne to contact its property manager in order to facilitate the transfer of services.
Appellees decided to offer their residents cable service through a company called CableNet, LLC ("CableNet"). CableNet offered a wider variety of commercial programming and service packages. However, MediaOne, which had a non-exclusive franchise with the city of Eastlake, provided public access, educational, and governmental channels that CableNet did not provide. At some point, appellees installed their own cable system at both complexes at a cost exceeding $100,000.
On January 19, 1999, MediaOne's account executive met with appellees' representative. Again it was made clear that appellees were making other arrangements for cable service. At the meeting, MediaOne's account executive renewed the offer for revenue sharing. He also indicated that MediaOne might be able to pay a one-time access fee in exchange for an agreement, although he did not provide appellees with a dollar amount. No offer was set forth in writing. Appellees rejected MediaOne's offer for revenue sharing and proceeded with their own plans.
MediaOne filed a verified petition for appropriation on February 24, 1999. The trial court conducted a hearing on the petition on June 18, 1999, and subsequently denied the petition on July 6, 1999. From this judgment, MediaOne timely filed notice of appeal, assigning the following errors:
 "[1]. The Court erred in finding that MediaOne's Petitions were an abuse of the corporate power and that the appropriations were not necessary.
 "[2]. The Trial Court erred in finding that the evidence of the parties' negotiations did not establish an inability of the parties to agree on compensation for the easements."
 A cable television system (company) is a communications business under R.C. 4931.11. Cablevision of the Midwest, Inc. v. Gross, (1994), 70 Ohio St.3d 541, syllabus. As such, cable television companies have the powers and are subject to the restrictions set forth in sections R.C. 4931.01 to 4931.23, inclusive. R.C. 4931.11. The power of eminent domain is set forth in R.C. 4931.04. R.C. 4931.04 empowers such companies to appropriate property as a company deems necessary for the construction or maintenance of its cables. This must be done in accordance with sections R.C. 163.01 to 163.22, inclusive. R.C. 4931.11.
MediaOne initiated the appropriation process by filing verified petitions for appropriation. As was their right, appellees filed an answer in accordance with R.C. 163.08. In their answer, appellees argued that MediaOne had failed to meet the condition precedent for filing a petition for appropriation as set forth in R.C. 163.04, specifically, that the parties were unable to agree on the value (the price) of the real estate to be appropriated. Secondly, appellees denied that the appropriation was necessary, and argued that MediaOne's attempt to appropriate the property was an abuse of its power of eminent domain.
"R.C. 163.08 and R.C. 163.09 mandate a hearing on the right or necessity of an appropriation action when an answer is filed in the action specifically denying either the right to make the appropriation, or the necessity for the appropriation, with facts relied upon in support of such denial." Weir, Director of Transportation v. Wiseman (1982),2 Ohio St.3d 92, paragraph one of syllabus.
At the hearing, the trial court may review three issues: whether the company's determination that the appropriation was necessary was an abuse of discretion, whether the company's allegation in its petition that the parties could not agree is true, and whether the company has the right to appropriate the property. R.C. 163.09(B); Huron v. Hanson (July 28, 2000), Erie App. No. E-99-060, unreported, 2000 Ohio App. Lexis 3358, at 12. The burden of proof is on the owner who is challenging the condemnor's right to make the appropriation, or who is disputing the inability of the parties to agree on the amount of compensation, or who is denying the necessity for the appropriation. R.C. 163.09; Hover v.Warren (Dec. 31, 1997), Trumbull App. No. 97-T-0012, unreported, at 8. Our review "is limited to a determination of whether [the trial court's] action [in affirming the council's decision] was arbitrary, unreasonable, or otherwise an abuse of discretion." Id., citing BranfordVillage Condominium Unit Owners' Assn. v. Upper Arlington (1983),12 Ohio App.3d 120, 121.
The trial court concluded that, based on the facts of this case, MediaOne was abusing the power of eminent domain "for its own self-interest and to gain a market advantage." The court found that MediaOne filed its petitions after making little, if any, effort to negotiate with appellees for the appropriation. The court concluded that MediaOne was intent on appropriating the property without negotiation, and was not reasonable in its offers for settlement. The court found the only reason for the appropriation was to enable MediaOne to maintain its customer base at the apartments, that it was not for the welfare of the general public, nor would it increase MediaOne's ability to provide service to the general public. The court concluded granting the petition would only solidify MediaOne's position in that particular market, and likely result in its regaining a monopoly over the tenants at the expense of the smaller, "yet equally as beneficial," cable service. The court concluded this was not consistent with the intended or appropriate use of the eminent domain power, and denied and dismissed the petitions.
We will address the second assignment of error first. R.C. 163.04
requires that "[a]ppropriations shall be made only after the agency [company] is unable to agree, for any reason, with the owner * * *" on the amount of compensation for the property. MediaOne contends that it satisfied that condition by its offer on September 10, 1999, to pay appellees eight percent of the revenues derived from an exclusive access agreement. MediaOne modified that offer on September 18, 1999, indicating a willingness to provide service on a non-exclusive basis. MediaOne also orally renewed the offer on January 19, 1999, and additionally indicated it might be willing to pay a one-time, up-front, access agreement fee. Because appellees rejected these offers, MediaOne contends it established the parties were unable to agree on a price for the property to be appropriated.
Appellees, who had the burden of establishing there was not an inability to agree, argued that MediaOne never made an offer to acquire
the property, rather it attempted to negotiate access agreements. Appellees characterize the negotiations as being for a license to provide a service, not for the acquisition of property. Secondly, they argue that if MediaOne's offers were for the acquisition of the property, they were not made in good faith. MediaOne never indicated it intended to purchase the property. No offer was made to purchase the property, and it never conveyed to appellees that a failure to reach an agreed price would result in an appropriation action. Appellees maintain that in the absence of an offer to acquire the property, there cannot have been an inability to agree. The trial court agreed, and so do we.
R.C. 163.59 states in division (A) "[t]he head of an acquiring agency shall make every reasonable effort to acquire expeditiously real property by negotiation." Division (B) states "[r]eal property shall be appraisedbefore the initiation of negotiations, and the owner or his designated representative shall be given an opportunity to accompany the appraiser during his inspection of the property, except that the head of the lead agency may prescribe a procedure to waive the appraisal in cases involving the acquisition * * * of property with a low fair market value. * * *." (Emphasis added.) The trial court took note of this division in reaching its decision. In the instant case, the account executive attempting to negotiate an agreement on behalf of MediaOne was not even aware of the possibility of appropriating the property when he made offers for access agreements in September of 1998. It is evident that he was not negotiating for the acquisition of property, but rather for access agreements comparable to a license. The executive became aware of the possibility of acquiring the property in either December of 1998, or early January of 1999. He subsequently had one meeting with appellees' representative wherein he renewed the offer of revenue sharing for access, but he never indicated a desire or intent on the part of MediaOne to acquire property. Nor was any attempt made to appraise the value of the property, either formally or informally. It appears from the record that there was not a negotiation for the sale of property. We cannot say the trial court's conclusion in this regard was arbitrary, unreasonable, or otherwise an abuse of discretion. Therefore, the trial court did not err in dismissing MediaOne's petitions. Appellant's second assignment of error is without merit.
Returning to the first assignment of error, MediaOne's right to exercise the powers of eminent domain is not disputed. But this power is not absolute and must be exercised in accordance with Revised Code subsections 163.01 to 163.22. A petition for appropriation filed by a private agency must state that the appropriation is necessary. R.C.163.05(B). The statement of necessity within a petition is prima facie evidence of such necessity in the absence of proof showing an abuse of discretion by the agency in determining such necessity. R.C.163.09(B). Thus, the owner of the property has the burden of demonstrating the agency has abused its discretion (abused its power).Hover, supra.
Necessity, in this context, has been variously defined. It may mean that which is indispensable or requisite, especially toward the attainment of some end. Dayton v. Keys (1969), 21 Ohio Misc. 105, at 112, citing Dayton v. Borchers (1967), 13 Ohio Misc. 273. More generally, it has been applied as meaning that which is reasonably convenient or useful to the public. Dayton v. Keys, supra, at 112, citing Solether v. Ohio Turnpike Commission (1954), 99 Ohio App. 228; See, also, Huron v. Hanson (July 28, 2000), Erie App. No. E-99-060, unreported, 2000 Ohio App. Lexis 3358, at 20. In eminent domain cases, it has been applied not as meaning "absolutely necessary or indispensable," but as meaning "reasonably necessary to secure the end in view." Solon v. Smiley (1967), 12 Ohio Misc. 269, at 274, citingSolether, supra.
The trial court found the only reason for the appropriation was to enable MediaOne to maintain its customer base at the apartments, and that it was not for the welfare of the general public, nor would it increase MediaOne's ability to provide service to the general public. The trial court found that granting the petition would simply, and likely, result in the substitution of one cable service for another "equally as beneficial" cable service. The court concluded this was not consistent with the intended use of the appropriation power under R.C. Chapter 163, and denied the petition.
Appellees contended that MediaOne's service was not necessary because the residents of the apartments were receiving more cable programming than was previously offered by MediaOne, and because appellees had built competition and choice into their system by offering their residents packages from two companies, CableNet and DirecTV. Appellees further argued that MediaOne was abusing its power of eminent domain because the purpose of the appropriation was not for the benefit of the general public, but simply to increase its market share and to maintain its customer base. The trial court agreed. We cannot say the trial court's conclusion was arbitrary, unreasonable, or otherwise an abuse of discretion. Appellant's first assignment of error is without merit.
While we recognize that in Cablevision of the Midwest v. StarkEnterprises, Inc. (Nov. 25, 1998), Cuyahoga App. No. 73504, unreported, 1998 Ohio App. Lexis 5584, the Eighth District Court of Appeals came to a different conclusion under like factual circumstances, the decision of that court is not binding on this district.
The judgment of the trial court is affirmed.
 _______________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J., NADER, J., concur.