BLUEGRASS PIPELINE COMPANY, LLC, Appellant

v.

KENTUCKIANS UNITED TO RESTRAIN EMINENT DOMAIN, INC., Appellee

NO. 2014-CA-000517-MR

Court of Appeals of Kentucky.

RENDERED: MAY 22, 2015; 10:00 A.M.

Discretionary Review Denied by Supreme Court February 10, 2016

Briefs for Appellant: Gregory P. Parsons, William T. Gorton, III, Chadwick A. McTighe (argued), Lexington, Kentucky

Brief for Appellee: Thomas J. FitzGerald (argued), Frankfort, Kentucky

Brief for Amicus Curiae Kentucky Oil and Gas Association: John Kevin West, D. Eric Lycan, Lexington, Kentucky

Brief for Amicus Curiae American Civil Liberties Union of Kentucky: William Sharp, Legal Director of ACLU of Kentucky, Louisville, Kentucky, Randal A. Strobo, Midway, Kentucky

BEFORE: J. LAMBERT, STUMBO AND TAYLOR, JUDGES.

*OPINION*

STUMBO, JUDGE:

Bluegrass Pipeline Company, LLC appeals from an opinion and order of the Franklin Circuit Court which granted summary judgment in favor of Kentuckians United to Restrain Eminent Domain, Inc. (hereinafter referred to as KURED). The order held, among other things, that Bluegrass Pipeline did not have the power to condemn property pursuant to eminent domain. We find no error and affirm.

The trial court in this case set forth a detailed summary of the necessary facts of this case; therefore, we will utilize it.

Plaintiff, Kentuckians United to Restrain Eminent Domain, Inc (hereinafter "KURED") is a non-profit, incorporated under the laws of the Commonwealth of Kentucky, whose purpose is "to protect Kentuckians from the threat of and attempts to exercise eminent domain by entities not in the public service to Kentuckians." *Plaintiff's Motion for Summary Judgment*, p. 4. Defendant, Bluegrass Pipeline Company, LLC (hereinafter "Bluegrass"), is a limited liability company with its principal office in Tulsa, Oklahoma, but with a registered office in Frankfort, Kentucky. Bluegrass is a joint venture of Williams Company and Boardwalk Pipeline Partners which proposes a 24-inch pressurized underground pipeline for transporting natural gas liquids (hereinafter "NGLs") (a mixture of pentane, propane, butane, isobutene, and ethane) from the Marcellus and Utica shale formations in Pennsylvania, West Virginia, and Ohio, to the Gulf of Mexico. Among

KURED's members (and also serving on its Board of Directors) is Penny Greathouse, a resident of Franklin County whose property is located along the initial path of the proposed Bluegrass [pipeline]. Ms. Greathouse has been approached by representatives of Bluegrass to survey her property for a potential location of an easement for the pipeline, and has spoken with Rich Ellis on four different occasions in which Mr. Ellis has said that the company has the right of eminent domain, but did not like to exercise it. *Affidavit of Penny Greathouse.*

Plaintiff filed this action in Franklin Circuit Court on December 5, 2013 seeking a declaration of rights under KRS 418.040 as to the validity of the claim of Bluegrass that it has the power of eminent domain under Kentucky law. Plaintiff seeks a ruling adjudicating the right of Bluegrass to invoke KRS 278.502 [ (statute regarding condemnation for the construction of oil and gas pipelines) ], KRS 416.675 [ (statute defining public use as it relates to the Kentucky Eminent Domain Act) ], and KRS 278.470 [ (statute stating that the delivery of natural gas through a pipeline is a public use) ] to use eminent domain to condemn properties to install a natural gas liquids pipeline through Franklin County and other counties in Kentucky.

About three months after filing its complaint, KURED moved for summary judgment. A hearing was held on March 10, 2014. On March 25, 2014, the circuit court entered an order which granted summary judgment in favor of KURED and held that Bluegrass did not have the right to invoke eminent domain. This appeal followed.

The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure (CR) 56.03.... "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). Summary "judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Steelvest,* 807 S.W.2d at 480, *citing Paintsville Hospital Co. v. Rose,* 683 S.W.2d 255 (Ky. 1985). Consequently, summary judgment must be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor...." *Huddleston v. Hughes,* 843 S.W.2d 901, 903 (Ky.App.1992)[.]

*Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky. App.1996). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo."* *Lewis v. B & R Corporation,* 56 S.W.3d 432, 436 (Ky.App. 2001). The case at hand does not involve disputed material issues of fact, only questions of law.

■ Bluegrass's first argument on appeal is that the circuit court should have refused to issue a declaratory judgment because there was no ripe, justiciable controversy. Bluegrass argues that there is no justiciable controversy because it has not taken any steps to initiate eminent domain proceedings against anyone in Kentucky. Bluegrass claims that until a

condemnation action is pursued, any controversy is merely speculative.

■ "Any person ... whose rights are affected by statute ... or who is concerned with any title to property, ... provided always that an actual controversy exists with respect thereto, may apply for and secure a declaration of his right or duties[.]" KRS 418.045. "For a cause to be justiciable, there must be a present and actual controversy presented in good faith by parties with adverse interests in the subject to be adjudicated." *Appalachian Racing, LLC v. Family Trust Foundation of Kentucky, Inc.,* 423 S.W.3d 726, 735 (Ky.2014).

This issue was raised at the summary judgment hearing before the trial court. The trial court believed that there was justiciable controversy because Bluegrass is claiming that it has the power to condemn property under eminent domain. The court stated that "[p]roperty owners and taxpayers in general have a right to determine whether Bluegrass's claim is valid because not only does it affect their bargaining position, but it affects their legitimate interests and substantive rights as citizens when a private company seeks to exercise the sovereign power of condemnation." The court further held that a

> declaration of rights is necessary to determine whether Bluegrass has the right to condemn so that Ms. Greathouse and other landowners, who are within the ever changing present or future pathway of the proposed pipeline, can make informed decisions considering all factors when negotiating and deciding whether to grant an easement to Bluegrass and other private entities.

■ We agree with the trial court. Declaratory judgments are "declared to be remedial; their purpose is to make courts more serviceable to the people by way of settling controversies, and affording relief from uncertainty and insecurity with respect to rights, duties and relations, and are to be liberally interpreted and administered." KRS 418.080.

> This Court is not authorized to give advisory opinions on hypothetical factual situations, but it may declare the rights of litigants in advance of action when it concludes that a justiciable controversy is presented, the advance determination of which would eliminate or minimize the risk of wrong action by any of the parties. Justiciability turns on "evaluating both the appropriateness of the issues for decision ... and the hardship of denying judicial relief."

*Combs v. Matthews,* 364 S.W.2d 647, 648 (Ky.1963) (citations omitted).

In the case at hand, Bluegrass is actively negotiating with landowners. The threat of acquiring land through eminent domain has a current and material impact on negotiations between Bluegrass and landowners. As KURED and the trial court point out, landowners may grant voluntary easements over their property because they do not have the means to engage in litigation to determine the issue. If the eminent domain issue remains unresolved, it would give Bluegrass an unfair advantage during the negotiation process. We find no error on the issue of justiciability.

■ Bluegrass's second argument on appeal is that KURED lacked standing to bring the declaratory action.

> Standing ... focuses on whether the parties before the court have a personal stake in the outcome of controversy. "In order to have standing to sue, a plaintiff need only have a real and substantial interest in the subject matter of the litigation, as opposed to a mere expectancy." "The purpose of requiring standing is to make sure that the party

litigating the case has a 'personal stake in the outcome of the controversy' such that he or she will litigate vigorously and effectively for the personal issues." The determination of a party's standing requires consideration of the facts of each individual case.

*Interactive Gaming Council v. Commonwealth ex rel. Brown,* 425 S.W.3d 107, 112 (Ky.App.2014) (citations omitted).

■ KURED is not a landowner; therefore, it has no personal stake in this case. KURED relied on associational standing in order to bring this cause of action.

[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at 113 (*citing Hunt v. Washington State Apple Advertising Com'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)).

Bluegrass claims that KURED lacks associational standing because none of its members has standing to sue in his or her own right. Ms. Greathouse is a member of KURED and KURED relied on her membership in seeking to utilize associational standing. Bluegrass asserts Ms. Greathouse does not have standing in her own right because once she declined to sell the company an easement, it changed the route of the pipeline to bypass her property. Bluegrass argues that once it decided to bypass her property, she no longer had a personal claim.

We believe that KURED has associational standing to bring this declaratory action, through Ms. Greathouse, even though Bluegrass changed the pipeline route. Ms. Greathouse was approached on four different occasions by Bluegrass seeking an easement through her property. Even though Bluegrass has changed the route of the pipeline, it could easily be changed again to go through Ms. Greathouse's property.

In addition, the trial court believed that KURED could bring this action because its members are citizens of Kentucky. We agree. Kentucky courts have recognized the rights of citizens to bring suits to challenge the wrongful exercise of government power. *See Rose v. Council for Better Educ., Inc.,* 790 S.W.2d 186, 201 (Ky. 1989); *Russman v. Luckett,* 391 S.W.2d 694, 696 (Ky.1965). Here, Ms. Greathouse, as a citizen of Kentucky, could bring this declaratory action against Bluegrass on her own behalf. Even though Bluegrass is not a public or government entity, it is alleging that it has the power to utilize the government power of eminent domain. We find no error on the issue of standing.

■ Bluegrass's final argument on appeal is that it has the power to invoke eminent domain pursuant to KRS 278.502. "The construction and application of statutes is a matter of law and may be reviewed *de novo." Bob Hook Chevrolet Isuzu, Inc. v. Com. Transp. Cabinet,* 983 S.W.2d 488, 490 (Ky.1998). KRS 278.502 states:

Any corporation or partnership organized for the purpose of, and any individual engaged in or proposing to engage in, constructing, maintaining, or operating oil or gas wells or pipelines for transporting or delivering oil or gas, including oil and gas products, *in public service* may, if it is unable to contract or agree with the owner after a good faith effort to do so, condemn the lands and material or the use and occupation of the lands that are necessary for construct-

.ing, maintaining, drilling, utilizing, and operating pipelines, underground oil or gas storage fields, and wells giving access thereto and all necessary machinery, equipment, pumping stations, appliances, and fixtures, including tanks and telephone lines, and other communication facilities, for use in connection therewith, and the necessary rights of ingress and egress to construct, examine, alter, repair, maintain, operate, or remove such pipelines or underground gas storage fields, to drill new wells and utilize existing wells in connection therewith, and remove pipe, casing, equipment, and other facilities relating to such underground storage fields and access wells. The proceedings for condemnation shall be as provided in the Eminent Domain Act of Kentucky. [Emphasis added].

In granting summary judgment, the trial court believed that KRS 278.502 only granted condemnation powers to entities providing public utilities regulated by the Public Service Commission. It also believed that since the pipeline was only going to be utilized to move NGLs to the Gulf of Mexico, the pipelines would not be "in public service." We agree.

KRS Chapter 278 is entitled "Public Service Commission" (hereinafter PSC) and is dedicated to public utilities. Bluegrass is not regulated by the PSC. While it is true that "[t]itle heads, chapter heads, section and subsection heads or titles, and explanatory notes and cross references, in the Kentucky Revised Statutes, do not constitute any part of the law," KRS 446.140, we must still "construe statutes within their context and strive to give consistent meaning to related statutory provisions." *Rogers v. Fiscal Court of Jefferson County*, 48 S.W.3d 28, 31 (Ky.App. 2001) (citations and internal quotation marks omitted). KRS 278.502 is found in the statutory chapter dedicated to the PSC and public utilities. We believe that the legislature only intended to delegate the state's power of eminent domain to those pipeline companies that are, or will be, regulated by the PSC. In addition, the NGLs in Bluegrass's pipeline are being transported to a facility in the Gulf of Mexico. If these NGLs are not reaching Kentucky consumers, then Bluegrass and its pipeline cannot be said to be in the public service of Kentucky. We therefore affirm the circuit court's judgment that Bluegrass does not possess the ability to condemn property through eminent domain.

Based on the foregoing reasons, we affirm the judgment of the Franklin Circuit Court.

ALL CONCUR.