[Cite as *Sunoco Pipeline L.P. v. Teter*, 2016-Ohio-7073.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| SUNOCO PIPELINE L.P., | ) | CASE NO. 16 HA 0002 |
| | ) | 16 HA 0005 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| CAROL A. TETER TRUSTEE, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
Pleas General Division of Harrison
County, Ohio
Case No. CVH-2015-0058

JUDGMENT:                                   Affirmed.

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  September 29, 2016

[Cite as *Sunoco Pipeline L.P. v. Teter*, 2016-Ohio-7073.]
APPEARANCES:

For Plaintiff-Appellee:

Atty. Gregory Brunton
Atty Daniel Hyzak
Atty. Bruce Moore
Reminger Co., LPA
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215

Atty. James Hadden
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, Ohio 43215

For Defendant-Appellee

Atty. C. Craig Woods
Atty. Andrew H. King
Squire Patton Boggs (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio  43215

For Defendants-Appellants:

Atty. Eric McLoughlin
Atty. Jessica Sohner
Atty. Nicholas Anderson
Arenstein & Anderson Co., LPA
5131 Post Road, Suite 350
Dublin, Ohio 43017

Atty. Amy Milam
Atty. Chad Endsley
Atty. Leah Curtis
Ohio Farm Bureau Federation, Inc.
280 North High Street, 6th Floor
P.O. Box 182383

Atty. Jordan Berman
Assistant Attorney General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio  43215

ROBB, J.

{¶1} Defendant-Appellant Carol Teter, Trustee of the Carol A. Teter Revocable Living Trust appeals the decision of Harrison County Common Pleas Court granting Plaintiff-Appellee Sunoco Pipeline L.P.'s petition for appropriation and complaint for condemnation. There are two core issues in this case. The first is whether pure propane and pure butane are petroleum for the purposes of R.C. 1723.01, which permits common carriers to appropriate land. The second issue is whether the appropriation is necessary for public use.

{¶2} Although there is no definition of petroleum in R.C. 1723.01, consideration of the current statutory definitions and the common historical definitions of petroleum leads us to conclude pure propane and pure butane are included in those definitions. Furthermore, the term "petroleum" has taken on a technical or industry definition. This industry definition indicates petroleum includes pure propane and pure butane. As to the second issue before us, the evidence submitted to the trial court proved appropriation was necessary for public use. Consequently, for those reasons and the ones espoused below, the trial court's decision is affirmed.

<u>Statement of the Facts and Case</u>

{¶3} This appeal involves two trial court case numbers that concern Appellee's right to appropriate an easement from Appellant to run a pipeline across the Teter property that will transport pure propane and pure butane. The pure propane and pure butane are derived from fractionation of petroleum (the raw material) that was extracted from the Utica and Marcellus shale deposits in Ohio through hydraulic fracturing. The fractionation plants are located in Scio, Ohio and Jewett, Ohio.

{¶4} After trying and failing to obtain a voluntary easement from Appellant, Appellee filed a petition for appropriation and complaint for condemnation in Harrison County Common Pleas Court. CVH 2015 0058 5/19/15 Complaint. Appellant was named as defendant along with Enterprise TE Products Pipeline Co. LLC, Wellington Resource Group LLC, Texas Eastern Products Pipeline Co., Sinclair Oil & Gas Co.,

Chesapeake Exploration LLC, CHK Utica, LLC, and Total E&P USA Inc. 5/19/15 Complaint; 7/15/15 Amended Complaint. Sunoco sought the easement because it was building the "Mariner East 2 Pipeline," which will run from the fractionation plant in Scio, Ohio to Marcus Hook, Pennsylvania and Claymont, Delaware.

{¶5} Appellant filed an answer to the amended complaint to appropriate. 8/3/15 Answer.

{¶6} Around the same time Appellee filed its petition for appropriation and complaint for condemnation, Appellant filed her complaint in Harrison County Common Pleas Court against Appellee. 3/24/15 Complaint Case Number CVH 2015 0034. Appellant sought a declaratory judgment; she requested an order indicating eminent domain could not be used to appropriate an easement to her land. 3/24/15 Complaint.

{¶7} The cases were consolidated. 8/13/15 J.E. Thereafter, Appellee and Chesapeake, CHK Utica, and Total E&P stipulated the acquisition of an easement would not affect the validity or enforcement of leases. 9/10/15 Stipulation. Chesapeake, CHK Utica, and Total E&P were dismissed without prejudice. 9/15/15 Notice.

{¶8} A hearing was held on the complaint to appropriate in October 2015. The trial court identified the issues as: 1) does the definition of petroleum include propane and butane; 2) is the pipeline a common carrier; and 3) does the pipeline serve a public purpose. 12/14/15 J.E.

{¶9} As to the first issue, the trial court determined propane and butane are petroleum. Although the trial court acknowledged R.C. 1723.01 does not define petroleum, it used the General Assembly's definition found in other portions of the Ohio Revised Code. The trial court reasoned propane and butane are petroleum because R.C. 3746.01(L) indicates petroleum includes liquefied natural gas. Liquefied natural gas specifically includes propane and butane pursuant to Ohio Adm.Code 1301:7-7-38. Furthermore, the U.S. Energy Information Administration (EIA) defines petroleum to include petroleum natural gas plant liquids. According to EIA, natural gas plant liquids include propane and butane. The trial court

acknowledged the Ohio Administrative Code and the EIA's definition permitted the gases to be fractionated and liquefied. 12/14/15 J.E.

{¶10} The next issue was whether Appellee qualified as a common carrier. The trial court found it did. Pursuant to R.C. 1723.08 a common carrier is a company organized to transport petroleum through pipelines. The evidence indicated Appellee met the definition of a common carrier as set forth by Ohio case law and statutory law. 12/14/15 J.E.

{¶11} The third issue was whether the taking was necessary and for public use. The trial court began by setting forth the standard of proof. It found the burden of proof rests with Appellee to show, by a preponderance of the evidence, the taking was necessary and for public use. It explained that the presentation of evidence of necessity by a common carrier created a rebuttable presumption of the necessity for appropriation. The trial court then found the pipeline was necessary because the Mariner East 2 Pipeline project is reasonably convenient or useful to the public. It reasoned:

> The Court finds that it is undisputed that Eastern Ohio has an abundance of wet gas in its Utica shale. The Court takes note of the expanding drilling operations and the construction of oil and gas fractionating facilities in Harrison County, Ohio.

> The Court is further cognizant that in order for the Utica shale play to develop, pipelines must be constructed to move the wet gas to the fractionating plants in their raw form and from the fractionating plants in their useful forms to consumers.

12/14/15 J.E.

{¶12} The court further noted the pipeline is open to any member of the public who wishes to transport product. 12/14/15 J.E. The pipeline creates a means to deliver Eastern Ohio resources to market and provides a heating source to consumers by delivering propane. 12/14/15 J.E.

**{¶13}** Consequently, the trial court granted the request for appropriation of an easement.

**{¶14}** Prior to the compensation hearing, the parties reached a settlement on the amount of compensation. The settlement was memorialized in the trial court's February 16, 2016 final judgment entry.

**{¶15}** Appellant timely appealed the trial court's December 14, 2015 appropriation order. The trial court denied Appellant's stay request; however, this court granted the request. 4/11/16 Tr. Ct. J.E.; 4/28/16 COA J.E.

**{¶16}** Pursuant to R.C. 163.22 this appeal is "a matter of immediate public interest" and is to be heard "at the earliest practicable moment." R.C. 163.22. *See also Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 110.

**{¶17}** The Ohio Farm Bureau Federation and Harrison County Farm Bureau (Farm Bureau) filed a joint amici curiae brief in support of Appellant. The Association of Oil Pipelines, American Petroleum Institute, Ohio Manufacturers' Association and Ohio Chemistry Technology Council (Oil Pipelines) filed a joint amici curiae brief in support of Appellee.

<u>First Assignment of Error</u>

"The trial court erred by holding that pure propane and pure butane are 'petroleum' for purposes of the eminent domain statutes."

**{¶18}** The basis of Appellee's appropriation claim is R.C. 1723.01. This statute is titled "Power to enter upon and appropriate land." It provides, in pertinent part:

> If a company is organized * * * for transporting natural or artificial gas, petroleum, coal or its derivatives, water, or electricity, through tubing, pipes, or conduits, or by means of wires, cables, or conduits; * * * then such company may enter upon any private land to examine or survey lines for its tubing, pipes, conduits, poles, and wires, * * * and may appropriate so much of such land, or any right or interest therein, as is

deemed necessary for the laying down or building of such tubing, conduits, pipes, * * *.

R.C. 1723.01.

**{¶19}** The issue in this assignment of error revolves around the word "petroleum" and what constitutes "petroleum" for purposes of R.C. 1723.01.

**{¶20}** Our district is rich in Utica and Marcellus shale deposits. Hydraulic fracturing, commonly referred to as fracking, is used to extract raw material such as "wet gas" from the shale deposits. The parties appear to agree the raw material or wet gas that comes out of the ground during the fracking process qualifies as petroleum or natural gas for purposes of R.C. 1723.01.[1] However, the pipeline at issue is not transporting wet gas. Rather, the wet gas is transported to a fractionation plant where it is broken down into component parts. Two of those component parts are pure propane and pure butane. The pipeline at issue is going to be used to transport the pure propane and pure butane. It may also be used to transport ethane. The parties disagree about whether these components, specifically pure propane and pure butane, constitute petroleum under R.C. 1723.01.

**{¶21}** The trial court determined petroleum included pure propane and pure butane. It acknowledged R.C. 1723.01 does not contain a definition of petroleum. However, it looked to other portions of the Ohio Revised Code and the Ohio Administrative Code where petroleum was defined. It concluded based on those definitions, and the definitions from the EIA, pure propane and pure butane constituted petroleum. The trial court also relied on two Ohio Appellate Court decisions where the courts concluded other legislative sections could be used to define petroleum. 12/14/15 J.E.

**{¶22}** Appellant finds fault with that determination and asserts the statute must be strictly construed. Appellant argues the common definition of petroleum when the statute was enacted should have been used. R.C. 1723.01 was enacted in 1953 and has not been amended. This would mean the recent statutes defining

---

[1]Appellant's own witness testified that if the raw material was not processed though a fractionation plant, it would constitute petroleum. Tr. 170-171.

petroleum favorable to Appellee should not have been used to determine if pure propane and pure butane are petroleum. Likewise, Appellant asserts the Ohio Appellate decisions are inapplicable because none of the definitions for petroleum they relied upon included refined petroleum products that had been developed in 1953. Alternatively, Appellant argues pure butane and pure propane cannot be considered petroleum because they are not complex mixtures of hydrocarbons and are not liquids at standard temperature and pressure. Amici curiae Farm Bureau agrees with this reasoning.

{¶23} Appellee asserts the trial court's reasoning is sound. It contends while the statute should be strictly construed, the construction cannot be so strict that it renders an unreasonable result. Thus, Appellee and the amici curiae Oil Pipelines argue the trial court's use of other statutory and administrative definitions of petroleum was correct.

{¶24} We apply a de novo standard of review to the trial court's decision that petroleum, as used in R.C. 1723.01, includes pure propane and pure butane. *Ellis v. Ellis*, 7th Dist. No. 08 MA 133, 2009-Ohio-4964, ¶ 45, citing *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 8 (statutory interpretation is a question of law reviewed de novo). The parties' disagreement in this case begins with how strictly we must construe R.C. 1723.01, the appropriation statute at issue.

{¶25} In 1951, the Ohio Supreme Court stated appropriation statutes must be strictly construed, but not to the point that the interpretation is unreasonable. *Ohio Power Co. v. Deist*, 154 Ohio St. 473, 477, 96 N.E.2d 771 (1951). It indicated a reasonable construction is necessary especially when considering the practical problems public utilities face as a result of mechanical and scientific progress. *Id.* at 481.

{¶26} More recently, when determining whether appropriation was necessary in an urban blight case, the Court noted, although narrow in scope, judicial review in eminent-domain cases is not meaningless. *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 67. The courts are free to define the proper limits of the doctrine. *Id.* "A court's independence is critical, particularly when the

authority for the taking is delegated to another or the contemplated public use is dependent on a private entity." *Id*. at ¶71. In those cases any doubt over the property of the taking is resolved in the property owner's favor. *Id*.

{¶27} Appellant emphasizes the holding in *Norwood*, while Appellee focuses on the holding in *Ohio Power Co.* The parties' emphasis of one case over the other leaves the impression that the holdings are in conflict with each other.

{¶28} We disagree with that implication; these holdings do not conflict with each other. Both cases stand for the proposition that the statute is to be strictly interpreted. However, a strict interpretation does not mean stretching to a point where the statute is interpreted in an unreasonable manner.

{¶29} With that standard in mind, our analysis turns to the definition of the word "petroleum" as used in R.C. 1723.01. Because petroleum was not defined in R.C. 1723.01, the trial court looked to other sources for a definition. Specifically, definitions found in other portions of the Ohio Revised Code, definitions found in the Ohio Administrative Code, and the EIA's definitions.

{¶30} The trial court correctly looked to other sources for guidance. If the legislature has not defined a term in one chapter of the code, but has defined that term in other chapters of the code, those definitions can be used to guide what is meant by the term. *Ohio River Pipe Line, LLC v. Gutheil*, 144 Ohio App.3d 694, 700, 761 N.E.2d 633 (4th Dist.2001), citing *Cablevision of the Midwest, Inc. v. Gross*, 70 Ohio St.3d 541, 545, 639 N.E.2d 1154 (1994); *Ohio River Pipe Line LLC v. Henley*, 144 Ohio App.3d 703, 708, 761 N.E.2d 640 (5th Dist.2001).

{¶31} In multiple sections of the Ohio Revised and Ohio Administrative Codes petroleum is defined. R.C. 3746.01, the definitional statute for Voluntary Cleanup of Contaminated Property states:

> "Petroleum" means oil or petroleum of any kind and in any form, including, without limitation, crude oil or any fraction thereof, petroleum, gasoline, kerosene, fuel oil, oil sludge, oil refuse, used oil, substances or additives utilized in the refining or blending of crude petroleum or petroleum stock, natural gas, natural gas liquids, liquefied natural gas,

synthetic gas usable for fuel, and mixtures of natural gas and synthetic gas.

R.C. 3746.01(L).

**{¶32}** In R.C. 3737.87, the definition section for the chapter on Petroleum Underground Storage Tanks, petroleum is defined as:

"Petroleum" means petroleum, including crude oil or any fraction thereof, that is a liquid at the temperature of sixty degrees Fahrenheit and the pressure of fourteen and seven-tenths pounds per square inch absolute. "Petroleum" includes, without limitation, motor fuels, jet fuels, distillate fuel oils, residual fuel oils, lubricants, petroleum solvents, and used oils.

R.C. 3737.87(J).

**{¶33}** In the Ohio Administrative Code section 3745-300-01, titled Voluntary Cleanup of Contaminated Property, it is defined as:

"Petroleum" is oil or petroleum of any kind and in any form, including, without limitation, crude oil or any fraction thereof, petroleum, gasoline, kerosene, fuel oil, oil sludge, oil refuse, used oil, substances or additives utilized in the refining or blending of crude petroleum or petroleum stock, natural gas, natural gas liquids, liquefied natural gas, synthetic gas usable for fuel, and mixtures of natural gas and synthetic gas.

Ohio Adm.Code 3745-300-01(93).

**{¶34}** The above definitions state petroleum includes natural gas liquids. "Raw natural gas liquids" are defined in the definitional section of the Power Siting Chapter of the Revised Code:

(I) "Raw natural gas liquids" means naturally occurring hydrocarbons contained in raw natural gas that are extracted in a gas processing

> plant and liquefied and generally include mixtures of ethane, propane, butanes, and natural gasoline.

R.C. 4906.01(I).

**{¶35}** Furthermore, Liquid Petroleum Gas, also known as LPG, is defined in the Fire Code of the Ohio Administrative Code. It includes propane and butane. Ohio Adm.Code 1301:7-7:38(B)(1) ("A material which is composed predominately of the following hydrocarbons or mixtures of them: propane, propylene, butane (normal butane or isobutane) and butylenes having a vapor pressure not exceeding that of commercial propane."

**{¶36}** Likewise, the definition of the "Natural gas liquids fractionation facilities" indicates pure propane and butane are separated mixtures of light hydrocarbons or natural gas liquids at these facilities:

> (2) "Natural gas liquids fractionation facilities" means installations, including associated buildings, pipes, valves, tanks, and other equipment, used for the separation of mixtures of light hydrocarbons or natural gas liquids into individual, purity natural gas liquid products, which include ethane, propane, normal butane, iso-butane, and natural gasolines.

R.C. 3737.832(A)(2) (statute titled "Fire safety standards relating to shale oil processing premises; jurisdiction; fees").

**{¶37}** Appellant asserts the statutory definitions of petroleum support the conclusion pure propane and pure butane are not petroleum. She argues the use of words "mixtures" and "gases" in the above definitions excludes pure propane and pure butane from being considered petroleum. In the statutory and administrative code definitions referenced above, petroleum is defined as hydrocarbon mixtures. Pure propane and pure butane by definition are hydrocarbons because they are each composed solely of carbon and hydrogen.[2] According to Appellant, pure propane is

---

[2]Propane is three parts carbon and eight parts hydrogen; butane is four parts carbon and ten parts hydrogen.

not a mixture because it is just one hydrocarbon. Therefore, Appellant asserts the use of the word "mixture" means pure propane and pure butane do not fall under the definition of petroleum.

{¶38} Appellant further supports her position with testimony from Dr. Paul Matter. He was deemed to be an expert concerning petroleum, petroleum mixtures, liquid petroleum mixtures, natural gas mixtures, and the process by which they are separated. Tr. 144. He explained that petroleum is a complex mixture and is a liquid at standard pressure. Tr. 154. He asserted pure propane and pure butane are hydrocarbons, but are not petroleum because they are not a mixture and are each a gas at standard pressure. Tr. 155. Dr. Matter was of the opinion that pure propane is a component of petroleum, but once that component is separated from the other components it is no longer petroleum.

{¶39} Appellant's position fails. The definitions cited above provide an expansive definition of petroleum. The statutory and administrative code sections use the phrase "without limitation" multiple times, as well as acknowledge the definition of petroleum is evolving as the science evolves. The meaning of "petroleum" is not limited to the examples set forth in those statutory and administrative sections. The definition is not limited solely to hydrocarbon mixtures; it can also include pure hydrocarbons that result from the fractionation process.

{¶40} Considering all the above definitions in conjunction with each other leads this court to conclude that pure propane and pure butane are petroleum for purposes of R.C. 1723.01 when they are derived from splitting raw material or wet gas into its component parts.

{¶41} This conclusion is supported by decisions from our sister districts. In 2001, the Fourth and Fifth Appellate Districts were asked to determine whether petroleum products constituted petroleum as defined by R.C. 1723.01. *Gutheil*, 144 Ohio App.3d 694; *Henley*, 144 Ohio App.3d 703. Those courts found petroleum products did constitute petroleum and in doing so looked to other statutes. *Gutheil* at 699-701; *Henley* at 708. Admittedly, *Gutheil* and *Henley* dealt with petroleum by-products such as gasoline, kerosene, diesel fuel and other refined petroleum

products. Those products are considered mixtures of hydrocarbons. Here, we are dealing with pure component parts. However, that distinction is inconsequential. A product of petroleum is a product of petroleum regardless of whether it is pure or a mixture, with or without an additive. Recently, the Fifth Appellate District was asked to decide whether pure propane and ethane are petroleum under R.C. 1723.01. *Kinder Morgan Cochin LLC v. Simonson*, 5th Dist. No. 15 COA 044, 2016-Ohio-4647. The court determined it was based on the statutes discussed above and its *Henley* decision. *Id.* at ¶ 19-29. The court also used the 1993 definition from Webster's Dictionary which defined propane as a natural gas. *Id.* at ¶ 27.

{¶42} Appellant finds fault with the above decisions. Appellant points out both *Gutheil* and *Henley* were accepted as discretionary appeals to the Ohio Supreme Court. However, both were voluntarily dismissed by the parties. *Ohio River Pipe Line LLC v. Henley*, 94 Ohio St.3d 1403, 759 N.E.2d 781 (2001); *Ohio River Pipe Line, LLC v. Gutheil*, 94 Ohio St.3d 1403, 759 N.E.2d 781 (2001). Appellant argues the Ohio Supreme Court's acceptance of the cases for discretionary review is an indication the holdings would have been reversed. We disagree. This court will not draw a conclusion on whether or not the law espoused by an appellate court was correct based on the Ohio Supreme Court's decision to accept the issue for review. Our determination of whether we find a sister district's holding and reasoning persuasive is based on the law. In this instance, we agree with our sister districts' analysis supporting the conclusion that pure propane and pure butane are petroleum under R.C. 1723.01.

{¶43} Our conclusion is further supported by the fact that the word "petroleum" has taken on a technical and/or industry meaning. The General Assembly has explained, "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42.

{¶44} Testimony was elicited as to what "petroleum" means in the pipeline industry. Matthew Gordon is Principal Engineer for Appellee and is the project

manager for the Mariner East 2 Pipeline. Tr. 104. He testified he has been in the oil and gas industry for approximately 10 years and has worked for Appellee for almost his entire professional career. Tr. 105-106. He avowed he considers himself part of the oil and gas industry, and in the industry any component of petroleum is considered petroleum. Tr. 117, 119.

{¶45} His conclusion is supported by the EIA's definition of petroleum. The EIA is an agency of the U.S. Federal Statistical System. It "collects, analyzes, and disseminates independent and impartial energy information to promote sound policymaking, efficient markets, and public understanding of energy and its interaction with the economy and the environment." http://www.eia.gov/about/. The EIA's definition of petroleum includes natural gas plant liquids. https://www.eia.gov/tools/glossary/?id=petroleum. Natural gas plant liquids are defined as hydrocarbons in natural gas that are separated as liquids at fractionating plants and include petroleum gases. *Id.* Petroleum gases are products of that process and are propane and butane. *Id.* The definition of natural gas plant liquids indicates "component products may be fractionated or mixed." *Id.* Consequently, according to the EIA, pure propane and pure butane fall under the definition of petroleum.

{¶46} When the EIA's function, its definitions, Matt Gordon's testimony, and the General Assembly's definitions are considered in conjunction with each other "petroleum" has a technical or particular meaning in the industry. That definition includes pure component parts such as pure propane and pure butane.

{¶47} Appellant is of the position that we should not consider these current definitions, but instead should look at the definition of petroleum as it was used in 1953, which was the last time R.C. 1723.01 was amended. Appellant points out that all of the above statutes referenced were enacted or amended after 1953.

{¶48} For the reasons espoused above, such as the language "without limitation" in the current statutes, we disagree with Appellant's argument. However, even if we only consider the definition of "petroleum" as it was used in 1953, we still reach the same conclusion – propane and butane are petroleum.

{¶49} In the 1947 version of Webster's New International Dictionary, petroleum is defined as:

> An oil, inflammable liquid, almost colorless to black, but usually of a dark-brown or greenish hue, existing at many places in the upper strata of the earth. It has a sp. gr. of 0.6829 to 1.023 and a viscosity from less than that of water to more than that of heavy molasses. It is essentially a complex mixture of hydrocarbons with small quantities of other material, as sulphur (usually combined), nitrogen compounds, water and silica. * * * Petroleum is usually obtained by pumping or is forced out of drilled wells by the pressure of the gas occurring with it. It is prepared for use by fractional distillation into gasoline and naphthas, burning oil (kerosene), lubricating oils and waxes, fuel oils, asphalts and road oils, coke, etc. These products may be further separated and refined. See CRACKING. Its principal use is as a fuel for heating or in internal-combustion engines. Some of the fractions are used medicinally. Certain alcohols are now made from petroleum and its use as chemical raw material is expected to increase.

Webster's New International Dictionary 1833 (2d Ed.1947).

{¶50} This is the definition Appellant directs us to consider; Appellant contends in 1953 pure propane and butane were not considered petroleum. While it is true the above definition did not reference propane and butane as petroleum, the definition recognized petroleum was evolving. Not only did it indicate the chemical raw material is expected to increase, but it also referenced the products that come from petroleum though fractional distillation. In listing those products the definition used the word "etc.," which means the list is not a limited one. Furthermore, the definition also indicated those products may be further separated and refined through the cracking process. The definition of cracking at that time was, "A process in which the complex hydrocarbons composing petroleum, or other similar oils, are broken up by heat and, usually, pressure, into lighter hydrocarbons of simpler molecule

formulae." *Id.* at 616. Given the aforementioned definitions, the fractionation process was known in 1953, although it may not have been as advanced as it is today.

**{¶51}** The development and use of petroleum, including liquefied petroleum gas, has been ongoing in this country since the early 1900s. The Ohio Supreme Court has noted, "Although liquefied petroleum gas was discovered by chemists about 1910, it remained a waste product at the oil wells until the mid-1920s. Then, with the discovery of a more economical and convenient method for the capture and compression of the gas, the oil companies began to ship the new product in cylinders to individual customers." *Haning v. Pub. Util. Comm.*, 86 Ohio St.3d 121, 126, 1999-Ohio-90, 712 N.E.2d 707, 711 (1999), citing Annotation (1972), 41 A.L.R.3d 782, 787. In fact, the first large scale liquefaction of natural gas in the U.S. was in 1918. Hrastar, John (2014). *Liquid Natural Gas in the United States: A History* (First ed.). The East Ohio Gas Company built a full-scale commercial liquid natural gas plant in Cleveland, Ohio in 1940. *Id.* This plant pressurized the natural gas to the point it was liquid and stored it. This information demonstrates the science of petroleum and petroleum gases has consistently been evolving and in use in Ohio.

**{¶52}** Most importantly, we note the definition of propane in 1953 indicated propane is a component of petroleum. The 1947 version of Webster's New International Dictionary defined propane as, "A heavy gaseous hydrocarbon, $CH_3CH_2CH_3$, of the paraffin series, occurring naturally dissolved in crude petroleum." *Id.* at 1983.

**{¶53}** Consequently, although the 1947 definition of "petroleum" did not use the words "propane" and "butane," we find the historical definition did contemplate propane and butane being considered petroleum.

**{¶54}** In conclusion, this assignment of error lacks merit. Although petroleum is not defined in R.C. 1723.01, other Ohio Revised and Administrative Code sections indicate pure propane and pure butane are considered petroleum. Furthermore, we conclude the word "petroleum" has taken on a technical or industry definition, which includes pure propane and pure butane. Lastly, even under a historical view of the word "petroleum," we determine it included propane and butane.

## Second Assignment of Error

"The trial court erred by holding that Sunoco is a 'common carrier."

**{¶55}** In granting the appropriation request, the trial court found Appellee was a common carrier because Appellee is a company organized to transport petroleum, the product to be transported is petroleum, the shipping was offered to the general public at a Federal Energy Regulating Commissions' open season period, and 10% of the pipeline's capacity remains open to the general public. 12/14/15 J.E.

**{¶56}** Testimony elicited at trial incontrovertibly established the first finding and the last two findings. On appeal Appellant does not find fault with those findings; Appellant's argument focuses on the second finding. Appellant contends Appellee cannot be considered a common carrier because Appellee is not transporting petroleum. This argument is based on R.C. 1723.08 and R.C. 1723.01.

**{¶57}** In the first assignment of error R.C. 1723.01 and the definition of petroleum were analyzed. R.C. 1723.08 refers to R.C. 1723.01 in defining common carrier and provides:

> With respect to the transporting by it of natural gas, petroleum, coal or its derivatives, water, and electricity, a company described in section 1723.01 of the Revised Code is a common carrier and is subject to the duties and liabilities of a common carrier under the laws of this state. A company described in section 1723.01 of the Revised Code includes any firm, partnership, voluntary association, joint-stock association, company, or corporation, wherever organized or incorporated, when engaged in the business of transporting petroleum through tubing, pipes, or conduits as a common carrier.

R.C. 1723.08.

**{¶58}** Appellant's argument is simple and depends on the resolution of the first assignment of error. Appellant argues pure propane and pure butane do not constitute petroleum under R.C. 1723.01 and as such, Appellee is not a common carrier under R.C. 1723.08.

{¶59} In the first assignment of error, we held pure propane and pure butane are petroleum for purposes of R.C. 1723.01. Accordingly, Appellee is a common carrier. This assignment of error lacks merit.

### Third Assignment of Error

"The trial court erred by holding that the pipeline is 'necessary' and for 'public use.'"

{¶60} In determining whether the appropriation was necessary and for public use, the trial court indicated, pursuant to R.C. 163.021(A), Appellee has the burden to prove by a preponderance of the evidence appropriating the real property is necessary and for public use. The trial court then recognized Appellee is a common carrier and pursuant to R.C. 163.09(B)(1)(b), evidence of necessity created a rebuttable presumption for the appropriation.

{¶61} Using those standards, the trial court found the pipeline was necessary because it was "reasonably convenient or useful to the public to provide a streamlined means to take raw materials from the wells [sic] site to the plant and from the plant to consumers." It also stated the pipeline will service multiple public uses. Specifically, it noted Appellee is a common carrier whose use is open to any member of the public, the pipeline creates a means to deliver Eastern Ohio resources to market, and the pipeline provides a heating source to consumers by delivering propane. 12/14/15 J.E.

{¶62} At trial, Appellee asserted the propane and butane transported by the pipeline will be used to heat homes, as an additive to gasoline to help automobiles start in the cold winter months, and will be used at cracker plants. A cracker plant utilizes petrochemical manufacturing to split or crack molecules. Ethane, propane and butane are common feedstocks for petrochemical manufacturing. For example, ethane is cracked into ethylene, propane is cracked into propylene and butane into butenes. Those petrochemicals are then used to make common household products, including plastics. Appellee contends those products, the propane to heat homes and the gasoline, will come back to Ohio consumers.

**{¶63}** Appellant's argument under this assignment of error focuses on public use. She contends the uses espoused by Appellee are speculative and inaccurate, and thus, do not constitute public use. She claims the pipeline has no "off ramps" in Ohio, which means 100% of the product will be shipped and consumed outside of Ohio. Ohio will only get an economic benefit, which is insufficient to satisfy public use. Furthermore, there is no indication the propane or butane shipped to Marcus Hook will come back to Ohio for heating or gasoline use. Appellant asserts the benefit to Appellee, a private company, is certain while the benefit to Ohio is speculative. Appellant also argues the intended purpose of allowing private companies to appropriate land when they are a common carrier was to build intrastate energy infrastructure, not to authorize the building of interstate infrastructure or interstate transportation of Ohio's resources.

**{¶64}** Appellee disagrees and divides its arguments into two; public use and necessity.

**{¶65}** As to public use, Appellee contends being a common carrier under R.C. 163.01(H) created a rebuttable presumption the pipeline is for public use, and the rebuttable presumption was not overcome at trial. It argues the pipeline furthers Ohio's development of shale and without the pipeline Utica and Marcellus shale development and production will likely stagnate. Appellee points to the evidence it provided at trial that the propane and butane would be for public consumption by providing heat to homes, additives to gasoline, and the production of plastics. Appellee also asserts there is no indication the General Assembly intended appropriation to apply only to intrastate infrastructure, i.e. intrastate pipelines.

**{¶66}** As to necessity, Appellee asserts it passed a resolution declaring the necessity of the appropriation and therefore, it satisfied the burden of demonstrating necessity. However, even without the resolution, Appellee contends it showed that the proposed project is reasonably convenient or useful to the public. Contending the pipeline could have gone across another property or another means of transportation could be used does not defeat the determination that it is "convenient or useful to the public."

{¶67} Public use is discussed first. In considering the parties arguments, it is noted the trial court correctly set forth the standard. Appellee had the burden to prove by a preponderance of the evidence appropriating the real property was necessary and for a public use. R.C. 163.021(A) ("No agency shall appropriate real property except as necessary and for a public use. In any appropriation, the taking agency shall show by a preponderance of the evidence that the taking is necessary and for a public use.). However, "the presentation by a public utility or common carrier of evidence of the necessity for the appropriation creates a rebuttable presumption of the necessity for the appropriation." R.C. 163.09(B)(1)(b). Under R.C. 163.01(H)(1)(a) public use does not include a taking for conveyance to a private commercial enterprise unless the property is conveyed to a public utility, municipal power agency, or common carrier.

{¶68} One of the most insightful cases on public use is the Ohio Supreme Court's decision in *Norwood*. *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115. The analysis began with an explanation of eminent domain in the United States and Ohio. The Court stated, "the federal and Ohio constitutions forbid the state to take private property for the sole benefit of a private individual even when just compensation for the taking is provided." *Id.* ¶ 43. In Ohio, it is the understanding "that the sovereign may use its appropriation powers only upon necessity for the common good." *Id.* "[T]he exercise of sovereignty in eminent-domain cases is predicated on the notion that such a taking can be permitted only 'for the use and benefit of the people,' which is 'distinct from government interest, profit, or concern.'" *Id.*, citing *Cooper v. Williams*, 4 Ohio 253, 290 (1831) (not typo in cite, old case just reported in Ohio not Ohio St.). That said, the Court noted the concept of public use is malleable and elusive. *Norwood* at ¶ 44.

{¶69} The *Norwood* Court then set forth a detailed background of the evolution of eminent domain in Ohio. *Id.* at ¶ 45-53. Following that account, the Court observed the doctrinal evolution of appropriation reflects judicial understanding that the public-use test requires flexibility and consideration of diverse local conditions rather than rigid, uniform application. *Id.* at ¶ 55. However, the Court also

noted while economic concerns may be considered in addition to other factors, economic benefits alone are not sufficient public use for a valid taking. *Id.* at ¶ 75.

**{¶70}** At trial, evidence was offered about the public use of the Mariner East 2 Pipeline. It was explained that the Mariner East 2 Pipeline is going to transport liquefied pure molecules of propane and butane from fractionation plants in Harrison County, Ohio to Marcus Hook, Pennsylvania. The pipeline was described as an interstate or highway. Interstates and highways have on ramps and off ramps. Here, as it is currently planned, the Mariner East 2 Pipeline has no off ramps in Ohio. Once the product reaches any off ramp, including the last off ramp at Marcus Hook, Pennsylvania, where the product will go is speculative. There was testimony it could be shipped overseas and sold. Testimony indicated it could also be transported all over the northeast, including Ohio, for use in heating homes and as an additive to gasoline so that automobiles can start in colder temperatures. Testimony indicated Appellee owns a plant in Marcus Hook that might have the potential to be converted into a cracker plant. Tr. 71.

**{¶71}** Testimony also elicited evidence regarding the Utica and Marcellus shale development within our district. Without the pipeline infrastructure, the production would be stifled. Tr. 27. There is more liquid coming out of the ground than most thought. Tr. 27. If there is no effective means to transport the propane and butane, then there is no need to separate the 135,000 barrels a day of liquids. Tr. 27. Appellee's employee testified that without the pipeline "you may have to pay a dollar to get a product that you can sell for 50 cents to market and that's just not efficient and that will stifle production and that will stifle drilling and that will stifle royalties, and at the end of the day you have a local market that's just this big, small as compared." Tr. 27-28.

**{¶72}** All the above evidence establishes public use. Given propane and butane use, it seems certain that some products containing Ohio propane and butane will return to Ohio; it may be through additives to gasoline or plastics made from cracker plants. Furthermore, shale development continues to advance in our area. As of now there are no cracker plants in our area requiring an off ramp. However,

Shell is building a $4 billion ethane cracker plant near Monaca, Pennsylvania. http://businessjournaldaily.com/shell-cracker-seen-as-game-changer-for-region/. The Business Journal has indicated that this is "likely to send economic reverberations through the entire region." *Id*. As with any exploration of oil and gas, there is some speculation. Although there is no off ramp in Ohio's plan as of now, there may come a time when an off ramp is added because a cracker plant is built in the area. The Ohio Supreme Court in *Norwood* indicated the public use test requires flexibility and consideration of diverse local conditions. *Norwood*, 2006-Ohio-3799, ¶ 55. These are diverse local conditions which we must consider.

**{¶73}** Furthermore, Appellee is a common carrier, not a megastore or a private enterprise that would only be providing economic benefit to Ohio. The reason the General Assembly gave common carriers a rebuttable presumption is because common carriers, as defined by statute, provide our citizens with necessities such as electricity and water. The products, propane and butane, being transported are used to heat homes and as an additive to gasoline. Propane and butane are also used in the production of many products our society uses every day. Thus, the transportation of propane and butane provides more than economic benefit to Ohio, it provides some of the necessities of life.

**{¶74}** Admittedly, the pipeline is not an intrastate pipeline. Rather, it is an interstate pipeline. Appellant asserts R.C. 1743.01 does not permit appropriation for interstate infrastructure. In support of her position, Appellant asks us to read R.C. 1743.01 in conjunction with R.C. 743.39. R.C. 1743.01 is the statute on a private company appropriating land. R.C. 743.39 is the appropriation statute for a municipality and it is worded similarly to R.C. 1743.01:

> For the purpose of * * * transporting natural gas, petroleum, water, or electricity through or by means of tubing, pipes, conduits, wires, or cables, storing, transporting, or transmitting water, natural gas, or petroleum, or generating and transmitting electricity, a municipal corporation may enter upon any private land to examine or survey lines for such tubing, pipes, conduits * * *. The municipal corporation may

appropriate so much thereof as is necessary for the laying down or building of such facilities * * * and such buildings as are necessary for such purpose, as well as land overflowed.

R.C. 743.39.

If a company is organized * * * for transporting natural or artificial gas, petroleum, coal or its derivatives, water, or electricity, through tubing, pipes, or conduits, or by means of wires, cables, or conduits; * * * then such company may enter upon any private land to examine or survey lines for its tubing, pipes, conduits, poles, and wires, * * * and may appropriate so much of such land, or any right or interest therein, as is deemed necessary for the laying down or building of such tubing, conduits, pipes, * * *.

R.C. 1723.01.

{¶75} Appellant contends R.C. 743.39 authorizes a municipality to appropriate for intrastate infrastructure and since the language of R.C. 1743.01 is nearly identical to R.C. 743.39, R.C. 1743.01 also only gives a private company authority to appropriate for intrastate infrastructure.

{¶76} We disagree with this proposition. There is no designation between interstate and intrastate in the statutes; the express wording of the statutes do not state they only apply to intrastate infrastructure. Furthermore, even if R.C. 743.39 prevents a municipality from appropriating land for interstate infrastructure based on the municipality's function, a private company is not included in that statute. By having two separate statutes, one concerning a municipality and one concerning a private company, it could be deemed there is a designation that the two are different. Otherwise, one statute could have been enacted to cover both municipalities and private companies. If the two are different and municipalities by their nature cannot have interstate infrastructure, then it logically flows that private companies that do not have jurisdictional limitation could have interstate infrastructure and would be permitted to appropriate for interstate infrastructure.

**{¶77}** For those reasons, we disagree with Appellant's position that R.C. 1723.01 does not authorize appropriation for interstate infrastructure.

**{¶78}** Lastly, Appellant relies on a Kentucky appellate court case for the proposition that interstate infrastructure that has no off ramps in the state does not constitute public use. In *Bluegrass Pipeline Co., LLC*, the court held eminent domain could not be used to acquire property for a pipeline across Kentucky that would transport Ohio products to the Gulf of Mexico. *Bluegrass Pipeline Co., LLC v. Kentuckians United to Restrain Eminent Domain, Inc.*, 478 S.W.3d 386, (Ky.App.2015) (Kentucky Supreme Court did not accept the appeal for review). The appellate court held eminent domain was not available for two reasons. First, the statute the pipeline was using to appropriate was in a chapter of the code titled "Public Service Commission." *Id.* at 392. That chapter was dedicated to public utilities. *Id.* The court held the legislature only intended to delegate the state's power of eminent domain to those pipeline companies that are or will be regulated by the Public Service Commission. *Id.* The Bluegrass Pipeline Co. was not regulated by the Public Service Commission and accordingly, it could not use the eminent domain statutes. *Id.* Also, the court held the product in the pipeline was not reaching Kentucky consumers. *Id.* The product was only traveling through Kentucky; there were no on ramps or off ramps in Kentucky. Thus, the court held there was no public service of Kentucky. *Id.*

**{¶79}** *Bluegrass Pipeline Co., LLC* is not controlling authority and it is distinguishable from the case at hand. Here, there is no requirement for the pipeline to be regulated by PUCO. Also, this is not a pipeline that merely runs through Ohio. This pipeline actually services Ohio in that it takes the product to market. This benefits Ohioans by maintaining a supply for the demand; wells are being drilled and Ohioans are receiving royalties.

**{¶80}** Furthermore, *Bluegrass Pipeline Co., LLC*, has been discussed and elaborated in *K. Petroleum, Inc. v. Property Tax Map No. 7 Parcel 12*, E.D. Kent. 6:14-201-DCR, 2016 WL 937329 (Mar. 10, 2016). In that case, the Federal Court held that a pipeline that is available for public use meets the public service

requirements, at least as to common carriers. *Id.* That holding would suggest, for our purposes, since the Mariner East 2 Pipeline is open for public use and Appellee is a common carrier, there is public use.

**{¶81}** Consequently, for all the above stated reasons, the evidence submitted established public use.

**{¶82}** Necessity is discussed next. Appellee asserts the trial court's finding of necessity was correct. Although Appellant does not make any specific arguments regarding necessity under this assignment of error, necessity is addressed.

**{¶83}** At trial, Appellee provided evidence it passed a resolution declaring the necessity of the appropriation for the Mariner East 2 Pipeline. The Federal Energy Regulatory Commission has acknowledged that public necessity:

> [Appellee] SPLP has demonstrated that additional NGL transportation is necessary in the active natural gas production areas to be served by the [Mariner East 2] Project. [Appellee] SPLP has demonstrated that excess NGLs are being produced in the Marcellus and Utica Shale areas, which may impede natural gas production unless additional NGL transportation can be developed. [Appellee] SPLP also seeks the right to add more origin and delivery points, which will aid in meeting the demand for transportation from these production areas. These rights will benefit both [Appellee] SPLP and its shippers in bringing additional NGLs to market and minimizing any impairment to natural gas production in those areas.

Federal Energy Regulatory Commission, Declaratory Order OR14040-000 (Dec. 1, 2014).

**{¶84}** Pursuant to R.C. 163.09(B)(1)(b) if Appellee provided evidence of necessity, then a rebuttable presumption of necessity for the appropriation was created because Appellee is a common carrier. In *Gutheil*, the Fourth Appellate District held a corporate resolution to construct the pipeline was prima facie evidence

of a public necessity. *Gutheil*, 144 Ohio App.3d at 702. Consequently, a rebuttable presumption of necessity was created.

**{¶85}** At the hearing, Appellant asserted the pipeline was not necessary because trucks or railroads could be used to transport the product, or a cracker plant could be built next to the fractionation plants. Appellant also asserted the pipeline could be reconfigured to bypass her land.

**{¶86}** These arguments and evidence were not sufficient to overcome the rebuttable presumption. Necessity means reasonably convenient or useful to the public; it is not limited to an absolute physical necessity. *Bd. of Trustees of Sinclair Community College Dist. v. Farra*, 2d Dist. No. 22886, 2010-Ohio-568, ¶ 37. Furthermore, "a contention that some other location or configuration might have served the same purpose is not a valid objection regarding whether the appropriation is necessary." *Eschtruth Invest. Co. L.L.C. v. Amherst*, 9th Dist. No. 10CA009870, 2011-Ohio-3251, ¶ 10. The logical extension of that position is, it is not a valid objection to claim the product could be transported a different way or a cracker plant can be built next to the fractionation plant.

**{¶87}** However, even if those were valid objections, those claims do not overcome the rebuttable presumption given the evidence submitted at trial. Appellee offered testimony indicating the pipeline was the most efficient option to move the propane and butane. Although testimony indicated transportation of the pure propane or pure butane to a cracker plant by means of truck or railroad was an option, it was explained rail and truck were less safe and inefficient. Tr. 28-29. This was especially the case considering Ohio winters (polar vortex) and the ability to use the highways and railways when there is an abundance of snow and ice. Tr. 28. In past years, winter delays caused by snow and ice resulted in price spikes. Tr. 28. Also testimony indicated the sheer volume of liquids would overwhelm highways and the cost of trucking is four to five times as much as a pipeline tariff. Tr. 28.

**{¶88}** Consequently, there was sufficient evidence to show necessity.

**{¶89}** In conclusion, this assignment of error lacks merit. Appropriation was necessary and for public use.

<u>Fourth Assignment of Error</u>

"The trial court's holding that the term 'petroleum' includes pure propane and pure butane makes R.C. 1723.01 unconstitutional because it renders the limitations on a private company's ability to use eminent domain vague and meaningless."

**{¶90}** Appellant argues the trial court's interpretation of the word "petroleum" as used in R.C. 1723.01 renders the statute unconstitutional under the void for vagueness doctrine. Appellant is not asserting the statute is void for vagueness on its face; petroleum has a plain and ordinary meaning and thus, the statute would not be void on its face. Rather, she contends defining petroleum to include pure propane and pure butane would mean every molecule derived from petroleum would constitute petroleum, which would include millions of different molecules. This, according to her, renders the limitations of a private company's ability to use eminent domain vague and meaningless.

**{¶91}** Appellee claims this constitutional issue was not raised to the trial court, and therefore, is waived. Alternatively, it argues the trial court's interpretation of R.C. 1723.01 does not include every molecule of petroleum, but rather was specific as to propane and butane because those molecules were specifically listed in the Revised Code.

**{¶92}** In response to the waiver claim, Appellant asserts she could not have made the void for vagueness argument to the trial court because it could not have raised this argument before the trial court rendered its decision.

**{¶93}** Considering the arguments presented to the trial court, the void for vagueness argument is waived. The majority of the arguments presented to the trial court during the appropriation hearing concerned the definition of the word "petroleum" as used in R.C. 1723.01 and whether it included pure propane and pure butane. Each party called its own witness to testify at the hearing about whether propane and butane were considered petroleum under R.C. 1723.01. The parties post trial briefs also focused on that same issue. Appellee consistently and relentlessly argued propane and butane are considered petroleum as used in R.C. 1723.01. It cited numerous statutory definitions of petroleum to support that

conclusion. The trial court agreed with Appellee's argument. Appellant now claims the interpretation renders the statute unconstitutional. However, in arguing what the term "petroleum" meant in R.C. 1723.01, Appellant never argued to the trial court that Appellee's interpretation would render the statute unconstitutionally void for vagueness. However, the argument was apparent and could have been asserted.

**{¶94}** We have recently explained:

The Ohio Supreme Court has held that "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue." *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. However, the Ohio Supreme Court has also held that the waiver doctrine announced in *Awan* is discretionary. *In re M.D.*, 38 Ohio St.3d 149, 527 N .E.2d 286 (1988), syllabus. "Even where waiver is clear, [a reviewing court may] consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *Id.*

But recognizing plain error in a civil case occurs only in extremely rare situations "involving exceptional circumstances" where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. In this case, we cannot conclude that the trial court committed plain error by failing to consider the constitutionality of the 1989 version of R.C. 5301.56 when neither party raised this argument. Not only did neither party raise this argument, but both parties argued how they would prevail under the 1989 version. Thus, we need not address appellant's constitutional argument.

*Walker v. Shondrick-Nau*, 7th Dist. No. 13 NO 402, 2014-Ohio-1499, ¶ 56-57, reversed on other grounds, 2016-Ohio-5793.

**{¶95}** That holding is equally applicable here. Appellant waived the constitutional issue. Furthermore, in this instance, we decline to recognize plain error. In the context of civil appeals, the plain error doctrine is not favored and should be recognized only in extremely rare situations. *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

**{¶96}** This assignment of error is meritless.

<u>Fifth Assignment of Error</u>

"The trial court's failure to require Sunoco to prove the necessity of the pipeline by clear and convincing evidence is plain error and is an unconstitutional infringement of Teter's fundamental property rights."

**{¶97}** This assignment of error deals with the necessity element of appropriation. Two arguments are presented. The first concerns the trial court's use of the "reasonably convenient or useful to the public" test to determine the pipeline was necessary. The trial court quoted the *Sloether v. Turnpike Comm.*, 99 Ohio App. 228 (6th Dist.1954) decision for that proposition. However, that decision does not quote that test. Accordingly, Appellant contends the trial court committed plain error when it used the test and cited the wrong case.

**{¶98}** This argument lacks merit. Although the trial court does indicate the reasonably convenient test comes from *Solether,* it appears to be a misquote. The reasonably convenient test comes from the Second District's *Farra* case, which states:

"Necessity means that which is indispensible [sic] or requisite especially toward the attainment of some end. * * * In statutory eminent domain cases it cannot be limited to an absolute physical necessity. It means reasonably convenient or useful to the public." *City of Dayton v. Keys* (1969), 21 Ohio Misc. 105, 112, 252 N.E.2d 655, citing *Solether v. Ohio Turnpike Commission* (1954), 99 Ohio App. 228, 133 N.E.2d 148. *Accord, City of Pepper Pike v. Hirschauer* (Feb. 1, 1990), Cuyahoga App. Nos. 56963, 56964, 56965 and 57667, and *City of Toledo v. Kim's*

*Auto & Truck Service, Inc.*, Lucas App. No. L-02-1318, 2003-Ohio-
5604, at ¶ 27.

*Farra*, 2010-Ohio-568 at ¶ 37.

**{¶99}** As can be seen, *Farra* quoted *Keys* which cited to *Solether*. It appears the trial court incorrectly cited the *Solether* court when it should have cited *Farra* or *Keys*. The act of incorrectly citing *Solether* does not mean plain error resulted. *Farra* does lay out the test. Therefore, there is support for the position that the test is "reasonably convenient or useful to the public."

**{¶100}** The second argument addresses the burden of proof for necessity. Appellant contends the rebuttable presumption of necessity in R.C. 163.09(B)(1)(b) is unconstitutional.

**{¶101}** Similar to the argument presented in the Fourth Assignment of Error, this argument is waived. The rebuttable presumption of necessity is created by statute. Appellant was or should have been aware of the rebuttable presumption. Thus, Appellant could have argued the alleged unconstitutionality of the presumption to the trial court. *Walker*, 2014-Ohio-1499 at ¶ 56-57. However, that argument was not made and thus, it is deemed waived. Furthermore, as with the Fourth Assignment of Error, we decline to recognize plain error.

**{¶102}** This assignment of error is meritless.

### Conclusion

**{¶103}** The trial court's decision is affirmed. All assignments of error lack merit.

Donofrio, P.J., concurs.

DeGenaro, J., concurs.