No. 15-0919 – *Mountain Valley Pipeline, LLC v. Brian C. McCurdy et al.*

**FILED**

**November 15, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, Justice, concurring:

Given that the proposed pipeline has not *yet* been demonstrated to be for a "public use,"[1] the majority was correct to affirm the lower court's decision that this state's eminent domain laws are not currently available to the petitioner. The majority's decision was impelled by, and must be understood within the context of, our statutes governing eminent domain and this Court's duty to apply settled and *still controlling* principles of law. I write separately to stress the continued importance of this state's eminent domain laws to our citizenry[2] and to make clear that this Court's ruling should not be viewed as a vote against the pipeline project.

As the majority fully elucidated, the right of a private corporation such as the petitioner to avail itself of our eminent domain laws is expressly linked to its ability to establish that the prospective taking at issue is for a "public use." *See* W.Va. Code §§ 54-1-

---

[1]The trial court is clear in its order that its ruling on the issue of public use was controlled by the evidence introduced below, specifically the lack of any actual agreement demonstrating that West Virginia residents would be provided with the right to use the gas being transported by the subject pipeline. Equally clear from the trial court's ruling is that the requisite public use can still be demonstrated upon the attainment of such an agreement.

[2]Eminent domain statutes are strictly construed as they operate in derogation of the private property rights protected under the West Virginia Constitution. *See State ex rel. Firestone Tire & Rubber Co. v. Ritchie*, 153 W.Va. 132, 138, 168 S.E.2d 287, 290 (1969).

1

1, -2(a)(3) (2016) (identifying public uses for which private property may be taken pursuant to state's powers of eminent domain to include construction, maintaining and operating pipelines for transporting natural gas subject to requirement that such taking must be "for public use"). Simply put, there is no right to exercise this state's power of eminent domain absent an initial determination that the taking at issue is for the "public use." W.Va. Code § 54-1-2(a)(3).[3] Consequently, as the trial court correctly ruled, a corporation who seeks to employ eminent domain–even for survey purposes only–has no right to proceed without first demonstrating that the proposed project is "for public use." *Id.*

In this case, that necessary prerequisite of establishing public use has not been demonstrated. After hearing evidence on these issues, the trial court ruled:

> 18. The Pipeline is not for public use under West Virginia law.
> 19. On the basis of the entirety of the evidence, the Defendants have failed to carry their burden of proving that the proposed pipeline is for a public use, and indeed the Plaintiffs have proven that the proposed pipeline is not for the public use.

In effect, Mountain Valley Pipeline ("Mountain Valley") wants this Court to legislate from the bench by determining that when an interstate gas pipeline moves gas from producers in

---

[3]In criticizing the majority for not allowing this state's powers of eminent domain to be used for the benefit of citizens of foreign states, the dissenting justice fails to fully comprehend the sovereign limits on eminent domain. As the trial court correctly stated, "West Virginia can only exercise the right of eminent domain, or authorize the exercise of that right, for the use and benefit of West Virginians." *See Clark v. Gulf Power Co.*, 198 So.2d 368, 371 (Fla. App. 1967) (recognizing that "property in one state cannot be condemned for the sole purpose of serving a public use in another state").

West Virginia to consumers in other states, this limited act of transporting natural resources outside our state's perimeters constitutes a public use under West Virginia Code § 54-1-2(a)(3). As our law currently exists, the mere transportation of West Virginia gas to a foreign state for its citizens' usage does not meet the definition of public use. *See also Bluegrass Pipeline Co., LLC v. Kentuckians United to Restrain Eminent Domain. Inc.*, 478 S.W.3d 386, 392 (Ky. Ct. App. 2016) (ruling that private, non-PSC regulated pipeline moving foreign-produced gas to the Gulf of Mexico was not "in public service" and finding eminent domain statute dedicated to public utilities inapplicable). More than a century ago, this Court recognized that corporations should be prohibited from employing the state's powers of eminent domain to acquire private property for private use. *See Pittsburg, W. & K. R. Co. v. Benwood Iron-Works*, 31 W.Va. 710, 735, 8 S.E. 453, 467 (1888) (cautioning that corporations "must not, for their own gain and profit, be permitted to take private property for private use" and stating that "[t]he mere declaration in a petition that the property is to be appropriated to public use does not make it so"); *see also* W.Va. Code § 54-1-2(a)(11) (2016) (providing that "in no event may 'public use' . . . be construed to mean the exercise of eminent domain *primarily for private economic development*") (emphasis supplied).

At best, Mountain Valley has promised the possible opportunity for West Virginia citizens to have access through two potential tap in points[4] to the gas being transported through ten West Virginia counties.[5] When this case was previously in federal court,[6] Judge Faber found that the pipeline under discussion "will not provide natural gas to West Virginia customers," but "will take natural gas from West Virginia to consumers in states farther south." *McCurdy v. Mountain Valley Pipeline, LLC*, 2015 WL 4497407 at *1 (S.D. W.Va. July 23, 2015). While Mountain Valley speaks in terms of the potential for gas usage by our citizens, the trial court determined, after hearing evidence, that "[t]here are no current agreements or commitments to provide any interconnects in West Virginia to local distribution companies to provide gas service in West Virginia to residential or business customers." As the trial court found additionally, the "general public does not have a fixed and definite right to the gas in the Pipeline."

---

[4]The trial court found that "[a]lthough local distribution companies can submit 'tap requests' to Defendant [Mountain Valley] to connect to the Pipeline to serve residential and business consumers, Defendant retains the right to refuse such requests." And, as the evidence adduced demonstrated, such a "refus[al] is consistent with federal regulations governing natural gas pipelines."

[5]Those counties are Braxton, Doddridge, Greenbrier, Harrison, Lewis, Monroe, Nicholas, Summers, Webster, and Wetzel.

[6]The case was dismissed for failure to meet the jurisdictional amount required to proceed. *See* 28 U.S.C. § 1332(a)(1) (requiring $75,000, exclusive of interests and costs, for amount in controversy to proceed in federal court on diversity grounds).

Without question, the trial court contemplated that the situation with regard to establishing the necessary public use may change. This is clear from the lower court's inclusion in its order of language that prohibits the right of Mountain Valley to enter onto the McCurdys' property to conduct its environmental survey "*until such time* as it is able to establish that it has the right of eminent domain by virtue of showing a public use of the pipeline."[7] When and if a public use can be demonstrated, through evidence establishing that West Virginians uncontrovertably will have access to this gas, or through legislative or constitutional amendments which provide that shipping this state's natural gas via pipeline across county and state lines without providing for usage by our citizens constitutes a public use for purposes of eminent domain, then Mountain Valley can proceed to obtain the survey it desires by means of West Virginia Code § 54-1-3.[8] Until such time, however, the trial court was correct in ruling that "[t]he public interest favors an injunction . . . to prevent a

---

[7](emphasis supplied).

[8]As Judge Faber made clear in his ruling, the pipeline project is not "doom[ed]" by a ruling in the McCurdys' favor. *McCurdy*, 2015 WL 4497407 at *7. There are alternate ways for Mountain Valley to obtain the relief it seeks and one such way is to obtain a conditional permit from the Federal Energy Regulatory Commission ("FERC"). The prospect of a conditional FERC permit, according to Judge Faber, is a game changer in that "defendant need not employ West Virginia law to conduct the necessary surveys on plaintiffs' land, but may conduct surveys on those properties to which other landowners [90%] have granted access, receive a conditional FERC Certificate to obtain immediate possession of the land through a preliminary injunction, and then conduct the remaining surveys necessary for an unconditional FERC Certificate." *Id.* at *4.

5

private business from entering the private property of West Virginians under a statute that grants it no such right."

Accordingly, I respectfully concur.